# Commonwealth *v.* Thomas, Appellant.

*Criminal law—Murder—Charge—Failure to request further instructions.*

1. Where counsel for defendant fails to ask further and fuller instructions or for corrections in the charge, although opportunity is given him, he cannot, on appeal, complain of error in the statement of facts by the trial judge either on the ground of inaccuracy or insufficiency.

*Criminal law—Murder—Flight of accused—Charge.*

2. It is not error to charge in a murder case as follows: "When a crime has been committed, and the person accused thereof knows that he is accused, and then flies or conceals himself, such conduct is evidence of consciousness of guilt, and, in connection with other proof, may be the basis from which guilt may be inferred."

*Criminal law—Murder—Reference to prisoner not testifying—Act of May 23, 1887, P. L. 158—Charge.*

3. Under the Act of May 23, 1887, the mere mention in a criminal trial of the defendant's failure to take advantage of his right to be heard, does not constitute error. To justify a reversal, the reference thereto must be adverse.

4. A conviction of murder will not be reversed because of a phrase in the charge alleged to have been an adverse reference to the defendant's failure to testify on his own behalf, where the context shows that the trial judge had no such intention, and the jury could not have been misled by what he said.

Argued May 24, 1922. Appeal, No. 82, Oct. T., 1922, by defendant, from judgment of O. & T. Allegheny Co., Feb. T., 1921, No. 176, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Joseph Thomas. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before STONE, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which sentence was passed.

*Errors assigned,* inter alia, were ruling and instructions, appearing by the opinion of the Supreme Court, quoting them.

*George H. White, Jr.,* for appellant.

*Harry H. Rowand,* for appellee.

OPINION BY MR. JUSTICE SADLER, June 24, 1922:

Anna M. Kirker resided with her husband and daughter in a house, somewhat removed from other dwellings, in Allegheny County. On December 16, 1920, she was alone and last seen alive about 10:30 in the morning, and at four in the afternoon her dead body was discovered in the living room by the returning daughter. Death had resulted from a gunshot wound, and investigation showed a number of articles had been removed from the home, including a gold watch, a manicure set and an overcoat of Mr. Kirker. Footprints in the snow showed the route followed by someone who had left the dwelling, and these were tracked by a roundabout course to a public highway. On this path were found, concealed at different points, an overcoat torn into two parts,—subsequently identified as having been worn on that day by defendant,—and also the manicure set which had been taken.

Later, Thomas was arrested on another charge, and the inquiry which followed disclosed facts connecting him with the Kirker murder. In his room were found copies of newspapers describing the occurrence, and, in his trunk, the watch of deceased, and the overcoat of her husband. He was arrested for the crime, but escaped, and was not apprehended until the following July in Baltimore. At his trial, the Commonwealth proved the facts above narrated, as well as other important circumstances indicating guilt. His presence near the Kirker house during the period when the murder was committed was testified to by several witnesses, who were positive in

their identification.  At that time, he was wearing the gray overcoat subsequently found concealed in the underbrush, as stated above.  The defendant did not testify, and no evidence was offered on his behalf.  The jury returned a verdict of guilty of murder of the first degree, and from the sentence subsequently imposed this appeal is taken.

But one complaint as to the admission of evidence appears,—assignment nine,—and this is based on the permission given to the Commonwealth to prove that the husband of the deceased was not at home on the day of the murder.  This objection is so clearly unfounded, that no discussion is required.  The remaining errors are directed to the charge of the court, to which a general exception was taken.  Number one complains of it as a whole, and the particular parts thereof alleged to have been prejudicial are separately assigned.  The third, fourth, fifth and eighth aver error in the statement of facts, either on the ground of inaccuracy or insufficiency. At the conclusion of the instructions, no request for corrections or amplification was made by defendant, though in a proper spirit of fairness this opportunity was given by the court.  It is too late now to complain for such reasons: Com. v. Washington, 202 Pa. 148;  Com. v. Webb, 252 Pa. 187;  Com. v. Russogulo, 263 Pa. 93;  Com. v. Varano, 258 Pa. 442.

It is insisted in assignment two that the defendant was harmed by the instructions as to the effect to be given circumstantial evidence.  Comparison shows the language used is practically that of Chief Justice GIBSON in charging the jury in Com. v. Harman, 4 Pa. 269, 272. The thoughts there expressed have found approval in later cases (Com. v. DuBoise, 269 Pa. 169;  Com. v. Kovovic, 209 Pa. 465), and no reason has been pointed out which would lead us to reach a different conclusion.

The court in discussing the effect of the flight of defendant said: "When a crime has been committed, and the person accused thereof knows he is accused, and then

flees or conceals himself, such conduct is evidence of con-
sciousness of guilt, and in connection with other proof
may be the basis from which guilt may be inferred." The
same words have previously been used in trials for homi-
cide, and held to correctly state the law: Com. v. Bos-
chino, 176 Pa. 103. There is no merit in the sixth
assignment.

Again, it is argued legal error was committed by the
reference made to the failure of defendant to testify.
For a clear understanding, we quote from the charge:
"The defendant was returned from Baltimore to the City
of Pittsburgh on July 22d last, and has been here from
that time to the present. The defendant has not seen fit
to produce any evidence in answer to the charge of the
Commonwealth, and in answer to the evidence produced
by the Commonwealth. It is the law, and I so charge
you, that the fact that the defendant does not go on the
stand, or does not produce any evidence in his own be-
half, is not to be taken and considered as any evidence
of guilt, or to be taken and considered as anything
against him whatsoever. For it sometimes and often
does occur that defendants and their counsel are not con-
vinced that the Commonwealth has produced sufficient
evidence which, even if believed, would be sufficient to
warrant a conviction. So therefore it is presumed in this
case that that reason prevails—but irrespective of that
it is nevertheless a matter and a question for you to de-
termine, because neither the counsel for the Common-
wealth, the district attorney, nor counsel for defendant,
nor the court have anything to do with the determining
of the facts of a case; that is what the jury is for, and
that is their province."

Prior to 1872 (Act of April 3, 1872, P. L. 34), a de-
fendant could not testify in a criminal case, though the
offense rose no higher than a misdemeanor. In 1877
(March 24, P. L. 45) the right to be heard was given in
case of trials for felonies where the court of oyer and
terminer had not exclusive jurisdiction, and later, (June

10, 1879, P. L. 149), a like permission was granted
where the indictment charged larceny and receiving
stolen goods.  On March 21, 1885, (P. L. 23), this
privilege was extended to all cases, but "his or
her neglect," omission or refusal to testify shall not
create any presumption against him or her, nor shall any
reference be made to, nor shall any comment be made
upon, such neglect, omission or refusal, by counsel."
When the general evidence Act of 1887 (May 23, 1887,
P. L. 158, section 10) was passed the earlier statutes
mentioned were repealed, and an important modification
of this direction was made.  It was then provided, and
the act is now in force: "Nor may the neglect or refusal
of the defendant actually on trial in a criminal court to
offer himself as a witness be treated as creating any
presumption against him; or be adversely referred to by
court or counsel during the trial."  It is to be noted that
no longer does the mere mention of the defendant's fail-
ure to take advantage of his right to be heard constitute
error (Com. v. Brown, 16 W. N. C. 557), but to justify
reversal the reference thereto must be "adverse."

So, a statement that the evidence of the Common-
wealth is uncontradicted is harmless: Com. v. Chicker-
ella, 251 Pa. 160; Com. v. Martin, 34 Pa. Superior Ct.
451; Com. v. Rizzo, 78 Pa. Superior Ct. 163.  To con-
stitute error, the remark must go further, indicating a
duty of the defendant to testify, and permitting an un-
favorable inference to be drawn from his failure to do so:
Com. v. Green, 233 Pa. 291; Com. v. Foley, 24 Pa. Su-
perior Ct. 414.  It must therefore be determined whether
the statement of the court, here complained of, can be
fairly said to be "adverse" to defendant.  It will be noted
first, the court instructed that no presumption could
arise from the fact that defendant did not take the stand,
and his failure to do so must not be considered as any
evidence of guilt.  This was followed by the reason for
the rule.  There can be no doubt the instruction to this
point was not prejudicial, but made the jury understand

that he was merely exercising his legal right, from which no harmful deduction could be made.

The only difficulty,—and an examination fully explains what at first raises doubt,—is the last sentence of the portion of the charge assigned. After stating the reason why no prejudice attaches from the failure to give evidence, in that defendant or his counsel may be convinced no sufficient evidence to convict has been produced, the court stated parenthetically,—so therefore it is presumed that that reason prevails," and then, returning to the thought as to the belief of defendant and his counsel of the insufficiency of the evidence to convict, says that is a question for the jury to determine, because counsel do not determine the facts. That this is what the jury must have understood is made evident by looking at the whole paragraph; if that had not been the meaning intended to be conveyed, the statement that it is not for counsel to pass on the facts would be without purpose. Had the stenographer in transcribing placed a dash between the words "conviction" and "so," as was done after the word "prevails," no question could have arisen. As printed, it is argued this might possibly be construed into a direction that the jury could find as a matter of fact the reason for not testifying was not a legal one, and, as a result consider the failure as an evidence of guilt. We are convinced, the jury could not have been so misled, in view of the statements which precede, and it cannot be fairly said the court made "adverse comment," or committed error.

The remaining assignments complain of the refusal of a new trial, and the passing of sentence. An examination of the record convinces there was sufficient competent evidence to justify the conviction of murder of the first degree. The case was fairly and correctly tried, and there appears to be nothing of which defendant has any just reason to complain.

The judgment of the court below is affirmed, and it is ordered that the record be remitted for the purpose of execution.