Commonwealth *v.* Thomas, Appellant.

Argued November 17, 1967.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

228

*David N. Savitt,* with him *John Patrick Walsh,* for appellant.

*Alan J. Davis,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 19, 1968:

Defendant was indicted for robbery and murder; a jury found him guilty of murder in the first degree, with penalty fixed at life imprisonment. Defendant filed a motion in arrest of judgment and for a new trial, both of which were denied. The questions for decision are: (1) Did the evidence in favor of the Commonwealth prove beyond a reasonable doubt that defendant was guilty of murder, and (2) was there any reversible trial error?

In *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693, the Court aptly said: "The law is well established that in considering the appeal of a defendant after a verdict or plea of guilty, the test of the sufficiency of the evidence is whether accepting as true all the evidence upon which, if believed, the jury could have properly based its verdict, such evidence is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged." Accord:

*Commonwealth v. Chester*, 410 Pa. 45, 188 A. 2d 323;
*Commonwealth v. Whiting*, 409 Pa. 492, 187 A. 2d 563.

## The Evidence

We shall consider the evidence and the contentions of the defendant and of the Commonwealth in the light of these authorities.

The evidence proves (indeed, it is not disputed) that on December 14, 1962, defendant gained admission to the home of Helen Whalen, the deceased, by representing himself as a volunteer worker from the local church. At that time, Helen Whalen lived with her two elderly sisters, Agnes and Mary, and her brother Harry. Mary testified that both she and her brother were thrown to the ground by defendant and that Agnes was cut on the head by him. After Agnes asked defendant what he wanted and defendant's responding demand of money, Mary went upstairs to procure a box in which she had stored $25. Mary further testified that the defendant came upstairs, grabbed the box from her, and as they came down the stairs he kept trying to push her down, though unsuccessfully. Defendant ran from the house, warning Mary not to follow him; Mary nevertheless followed him and ran across the street and called the police. When she returned to their house she found Helen (her deceased sister) lying on the floor in the foyer area between the door and the foot of the stairs. Mary's testimony that Helen was lying on the floor with a large bump on her forehead and that she looked as if she had been beaten was corroborated by two police officers. Helen was taken immediately to a hospital and died there two and a half months later.

James Gilmore testified that before the robbery he had gone with defendant to the Whalen neighborhood

and was told by defendant that he intended to rob the Whalen household. Gilmore further testified that they then separated but that some time later he saw defendant coming out of the Whalen household carrying a small metal box—later identified as the box containing the money stolen from the Whalens—and defendant told him he had knocked a lady down.

Dr. Axel K. Olsen, a Philadelphia Neurosurgeon, supervised the treatment of the deceased upon her admittance to Hahnemann Hospital. He testified that she had a contusion in her left forehead and in the right-back of the skull, accompanied by severe hemorrhaging. Dr. J. T. Weston, of the Philadelphia Medical Examiner's Office, performed a post-mortem examination on the deceased and testified that the phenomena described by Dr. Olsen were attributable to trauma and that this trauma and resulting contusions of the head had the effect of impeding the circulatory musculature, and were the underlying causes of death.

### Defendant's Motion in Arrest of Judgment

Defendant-appellant does not dispute any of the findings as to his identity as the robber, or the findings as to the aforesaid medical facts, or that they were the cause of death. Indeed, defendant's counsel did not even cross-examine the State's key witnesses on these points. What defendant does contend is that since there was no testimony (a) showing that he struck the decedent, or (b) that his actions in and during the robbery caused her to suffer the injuries which caused her death, there could be no finding, i.e., proof beyond a reasonable doubt, that he caused Helen Whalen's death.

We find no merit in this contention. The evidence undoubtedly proved (1) that defendant entered the

Whalen home; (2) that he attacked and threw down two of the four residents of the Whalen home; (3) that he inflicted a cut on one of the others; (4) that the deceased was a spry, active woman in good health only moments before the robbery; and (5) that after Mary returned from having phoned the police she found her sister Helen prostrate on the floor of their home with a large bump on her head, from which she subsequently died.

Defendant contends that since no one saw him strike Helen and that neither Mary who preceded him down the stairs, nor any other members of the Whalen family testified that *at that time or at any time before he left,* they saw the deceased prostrate in the foyer, she could not have been in that condition at that time. However, this argument is not based upon any testimony but on an assumption by defendant. Neither Mary nor any witness testified that when Agnes descended the stairs or at any other time when defendant was in their home, Helen's body was not on the floor where she was later found, nor was any witness cross-examined on this point. Moreover, we repeat, the evidence showed that Helen had no prior history of fainting spells, nor was there any evidence of some other cause for her bumps and contusions. Furthermore, even if deceased fell without being struck by defendant and thereby suffered her contusions due to fright caused by seeing defendant beat her sisters and brother, defendant would still be criminally responsible for death under the felony murder doctrine. *Commonwealth v. Melton,* 406 Pa. 343, 349, 178 A. 2d 728.

In the last analysis, defendant is contending that he cannot be convicted on circumstantial evidence. Of course that is not the law. *Commonwealth v. Chester,* 410 Pa., supra; *Commonwealth v. Whiting,* 409 Pa., supra; *Commonwealth v. Sauders,* 390 Pa. 379, 387,

134 A. 2d 890. In *Commonwealth v. Chester,* the Court said (page 50) : "In a homicide case, the Commonwealth must prove beyond a reasonable doubt that (1) a death has occurred, (2) that the death resulted from criminal agency, and (3) that the defendant is legally responsible for the death. See Commonwealth v. Gardner, 282 Pa. 458, 128 Atl. 87. The Commonwealth, however, is not restricted to direct proof of these elements but, on the contrary, circumstantial evidence alone may suffice so long as the inferences arising therefrom prove the fact in question beyond a reasonable doubt. Commonwealth v. Sauders, 390 Pa. 379, 134 A. 2d 890 (1957) ; Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820."

### New Trial

Defendant's alternative ground for reversal is that he was denied a fair trial in that the Court's charge to the jury was prejudicial. Specifically he objects to the portion of the charge referring to his failure to take the stand. The challenged charge was: "The defendant did not personally take the stand. It becomes incumbent upon me to charge you that the defendant does not have to take the stand. He can reserve the privilege to himself for any undisclosed reason to refuse to take the stand. The law says that the fact that the defendant did not testify creates no presumption or inference of any kind against him. This fact alone must not have any influence upon you in arriving at your verdict.

"Under our law, a defendant may elect not to personally testify, and he must be protected in that right. He would not be protected and this right would be meaningless if you drew an unfavorable inference against him because he had elected not to testify."

It is defendant's contention that the Judge's phraseology, to wit, "undisclosed reason" for not testifying, revealed his disapproval of the Constitutional privilege. We believe the charge was not reversible error. Cf. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Ross,* 403 Pa. 358, 169 A. 2d 780. A more apt charge can be found in *Kloiber,* where two defendants were tried together for armed robbery. We sustained the following charge (pages 417-418) : " 'There is one more thing to be said to you, and that is that any person accused of crime has a constitutional right not to testify. They have a right not to take the stand if they see fit to do so, and I want to impress on you that the fact that a person has chosen to exercise that constitutional right does not give you the power to draw any unfair or adverse inference concerning that person. To put it specifically, William Kloiber chose not to testify in this case. That was his constitutional privilege, and the fact that he exercised that right does not give you the right to draw any inference that could be adverse to him in this case.' "

Judgment of sentence affirmed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

We have before us a case in which the Commonwealth's evidence is far from overwhelming. No one saw the defendant actually strike the decedent, nor is it inconceivable that her death was not caused by criminal conduct at all. Thus, although I agree with the majority that there is enough circumstantial evidence to sustain a verdict of guilty, I nevertheless believe that this is precisely the case where the trial judge's instructions to the jury must be *most* carefully prepared and the language *most* carefully chosen. Unfortunately, I believe that some of the language used

in this charge was quite *poorly* chosen, and only reluctantly must I concur in the majority's ultimate conclusion that the charge *as a whole* was not reversible error under our Act of May 23, 1887, P. L. 158, §10, 19 P.S. §631 or under *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229 (1965).

It is to me extremely unfortunate that the court below, rather than relying on the myriad of well established and long accepted charges on the defendant's right to remain silent,* instead decided to strike out on its own and instruct the jury that the defendant may choose not to testify *"for any undisclosed reason."* And even more distressing is the fact that the majority of this Court has seen fit to endorse such language as both fair and proper. Indeed, there are times in the law when trial courts should at least be cautioned if not actually reversed. This, I believe, is one of those times.

Of course, I certainly do not wish to stultify judicial initiative or creativity in seeking to clarify instructions to make them more understandable and more helpful to the jury. What gives me concern is the unnecessary and suggestive use of "for any undisclosed reason" which adds nothing to the clarity, impartiality or fairness of the charge, but instead introduces the risk of setting the jury to speculating as to why the defendant did not take the stand. When it is considered just how influential a trial judge's remarks to a jury can be, and when it is further considered how fine is the line between an instruction on a man's right not to testify and a judicial "hint" that this failure to speak may indicate guilt, I can never encourage a jury charge such as the one here given. To recall the old

---

* See, e.g., *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820, cert. denied, 348 U.S. 875, 75 S. Ct. 112 (1954) ; *Commonwealth v. Thomas,* 275 Pa. 137, 118 Atl. 667 (1922).

adage, these instructions are like "milking the cow and then kicking over the bucket."

Mr. Justice Jones and Mr. Justice Eagen join in this concurring opinion.