353 A.2d 387
**COMMONWEALTH of Pennsylvania**
**v.**
**Curtis ILGENFRITZ, Appellant.**

Supreme Court of Pennsylvania.
Argued May 6, 1975.
Decided March 17, 1976.

John H. Chronister, York, for appellant.

Morrison B. Williams, Deputy Dist. Atty., York, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant was convicted by a jury of voluntary manslaughter for the slaying of his paramour, Janet ("Peggy") Payne. Following the denial of post-verdict motions he was sentenced to a term of imprisonment of from three to eight years in a state correctional institution. This direct appeal followed.

### 1. *Sufficiency of evidence*

■■ The first question presented is whether the evidence is sufficient to sustain the verdict of voluntary manslaughter.*

---

* The appellant frames this question in terms of whether the trial court erred in not sustaining his demurrer to the evidence for lack of proof of cause of death. Since, however, the defendant did not rest following this adverse ruling, but elected to put in a case in defense, the correctness of the ruling on the demurrer is no longer an available issue. See *Commonwealth v. Moore*, 398 Pa. 198, 201–202, 157 A.2d 65 (1959); *Commonwealth v. Spanos*, 167 Pa.Super. 629, 631, 76 A.2d 243 (1950). But see *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973). We have chosen, nevertheless, to treat the question as if properly framed, namely, whether the trial court erred in refusing defendant's motion in ar-

■ Our test for passing on the sufficiency of the evidence is well-known: " '[T]he test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' " *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). See also *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Long,* 460 Pa. 461, 333 A.2d 386 (1975); *Commonwealth v. Clark,* 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972). In addition, we are to consider the evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Green, supra; Commonwealth v. Rife,* 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin,* 441 Pa. 401, 404, 272 A.2d 886 (1971). Viewed with these requirements in mind, we have concluded that the evidence at trial was sufficient to sustain appellant's conviction.

The evidence established that on May 5, 1973, the defendant several times struck Peggy Payne on the head during the course of a domestic quarrel. As a result of this beating, Miss Payne was hospitalized for four days. At the time of her admission, she complained of sleepiness, headache and general lethargy. The admitting physician testified that he observed that she had bruises below and behind her right eye, tenderness behind her ear on the right side and bleeding into the white of her left eye. After it was determined that Miss Payne had not suffered a concussion, she was discharged from the

rest of judgment. In doing so, of course, we consider all of the evidence at trial, not only that contained in the Commonwealth's case in chief. See *Commonwealth v. Terenda,* 433 Pa. 519, 252 A.2d 635 (1969); *Commonwealth v. Tabb,* 417 Pa. 13, 207 A.2d 884 (1965); *Commonwealth v. Moore, supra; Commonwealth v. Kohne,* 204 Pa.Super. 78, 203 A.2d 401 (1964); *Commonwealth v. Gomori,* 192 Pa.Super. 325, 161 A.2d 649 (1960); *Commonwealth v. Cerzullo,* 175 Pa.Super. 330, 104 A.2d 179 (1954).

hospital. She was readmitted to the hospital on or about May 23, 1973, in a semi-comatose state. On May 27, 1973 she was examined by a neuro-surgeon, Dr. Steven Malina, who, following various tests, determined that she was afflicted with a subdural hematoma, or thick blood clot, on the right frontal portion of the brain. An operation was performed on that date to remove the clot. Despite the operation, Peggy Payne died on June 26, 1973 from complications resulting from the hematoma.

■ The question with which we are presented is whether the evidence sufficiently established that the blows administered by Ilgenfritz were the cause of the subdural hematoma which ultimately was responsible for the victim's death. We hold that the evidence was so sufficient.

There is no dispute that the evidence was sufficient to establish that on May 5, 1973, the appellant did strike Peggy Payne in the head. The only testimony specifically directed to the issue of causation came from Dr. Malina. He testified that "I would classify that hematoma with reasonable medical certainty to be old two to three weeks without doubt." This conclusion was based upon his examination of Miss Payne on May 27, 1973. On cross-examination, Dr. Malina amended the time span within which he believed the hematoma could have developed by saying it might be "[a] day or 2 earlier, day or two later." Using this testimony as a guide, the hematoma he observed on May 27 could be said to date from between May 4 and May 15, 1973. The date of the beating by appellant, May 5, 1973 thus falls within that time frame. Given this evidence and the fact that those blows were severe enough to cause Miss Payne's immediate hospitalization, the jury could justifiably conclude that the blows administered by appellant were the cause of the subdural hematoma.

Appellant argues, however, that the medical testimony is insufficient as a matter of law to permit the jury to be

satisfied of guilt beyond a reasonable doubt. For that proposition, appellant relies upon two cases decided by this Court: *Commonwealth v. Radford*, 428 Pa. 279, 236 A.2d 802 (1968) and *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971). Our holding in both those cases was that where in a homicide trial the only evidence of causation is the testimony of a medical expert, that testimony must establish the link between the act of the defendant and the death of the victim beyond a reasonable doubt. In *Radford*, we affirmed the granting of a motion in arrest of judgment where the physician who performed the autopsy on the victim was able to testify only that "the defendant's assault on the deceased *probably* caused the death." 428 Pa. at 281, 236 A.2d at 803. Similarly, we reversed the judgment of sentence in *Embry* because the forensic pathologist "was only able to reconstruct the chain of causation with a 'reasonable degree of medical certainty.' " 441 Pa. at 185, 272 A.2d at 179. The thrust of appellant's argument is that because only Dr. Malina's testimony was specifically directed towards the issue of causation and because he was unwilling or unable to say even with a "reasonable degree of medical certainty" that the blows struck by Ilgenfritz were the cause of Peggy Payne's death, *a fortiori*, his testimony was insufficient to prove causation.

Appellant reads the cited cases too broadly. While it is true, of course, that the Commonwealth must prove causation, like every element of a crime, beyond a reasonable doubt, it does not follow that only medical testimony can prove causation, or that any medical testimony which is relied upon by the Commonwealth must be framed specifically in terms of the beyond a reasonable doubt standard. In *Commonwealth v. Webb*, 449 Pa. 490, 296 A.2d 734 (1972) we stated in a similar context that

"[i]t was not necessary, as appellants contend, that the witness state it was his conclusion beyond a rea-

sonable doubt the head injuries caused McCall's [the victim's] death. 'Beyond a reasonable doubt' is a legal standard. Medical causation and legal causation are qualitatively different in their application. See 9 Duq.L.Rev. 542 (1971). Whether the Commonwealth's evidence is sufficient to warrant a finding of causal connection is initially a legal question for the court, but whether it is persuasive beyond a reasonable doubt is for the jury to say." *Id.* at 496, 296 A.2d at 737. See also *Commonwealth v. Scoggins,* 451 Pa. 472, 304 A. 2d 102 (1973); *Commonwealth v. Banks,* 447 Pa. 356, 285 A.2d 506 (1971).

Thus in the present case the mere fact that Dr. Malina was unable to testify that the subdural hematoma was, beyond a reasonable doubt, the result of appellant's assault does not destroy the Commonwealth's case. We have held that "it is not fatal that the Commonwealth cannot establish by direct evidence that the blows causing the fatal injury were inflicted by human agency. 'Admittedly, there were no eyewitnesses to the alleged beating; but the Commonwealth need not provide its case directly. Circumstantial evidence can be as reliable and persuasive as eyewitness testimony.' " *Commonwealth v. Blevins,* 453 Pa. 481, 486, 309 A.2d 421 (1973). See also *Commonwealth v. Paquette,* 451 Pa. 250, 301 A. 2d 837 (1973). As Thoreau has written, "Some circumstantial evidence is very strong, as when you find a trout in the milk." Journal, November 11, 1854.

To reiterate, in the present case, while Dr. Malina did not say that appellant's blows were, beyond a reasonable doubt, the eventual cause of Miss Payne's death, his testimony when coupled with the other evidence was sufficient to permit the jury to infer that fact. There was testimony by Peggy's parents that in the early evening hours of May 5, 1973, she went to her mother's home complaining that she had been struck on the head by the appellant. She was admitted to the hospital on that date

experiencing symptoms—drowsiness and headache— which, according to the testimony of Dr. Malina, were consistent with a diagnosis that she had suffered a subdural hematoma. Following Peggy Payne's readmission to the hospital on May 23, 1973, it was determined by the doctor that she, in fact, had suffered such a hematoma. The pathologist who later performed an autopsy upon the victim's body testified that in his opinion her death was directly attributable to the effects of the hematoma. Dr. Malina testified that the hematoma was of traumatic origin. His further testimony as to the time span within which the hematoma developed encompassed the date of Ilgenfritz' attack on Peggy Payne. The doctor also gave it as his opinion that if Miss Payne had suffered another blow from another source sufficient in magnitude to cause the hematoma, she would have sought medical attention. Because she did not seek such assistance, the jury could justifiably conclude that no such other blow took place and that the blows struck by Ilgenfritz were the cause.

At trial, appellant introduced evidence, both through his own testimony and the testimony of several other witnesses, that Peggy had suffered falls on May 3, 1973, and May 12, 1973. In both instances she was said to have struck her head. Such evidence was obviously designed to provide the jury with an alternative as to the source of the hematoma. The jury, however, apparently chose not to believe that either of those falls was the cause of the hematoma.

## 2. *Exclusion of hearsay evidence*

■ While we have concluded that the evidence was sufficient to support the conviction and that the motion in arrest of judgment was properly denied, we have also determined that the trial court erred in excluding certain testimony proffered by appellant and that this exclusion was sufficiently prejudicial as to require a new trial.

The testimony in question came during the direct examination of a Mrs. Whetzel, who was one of a series of witnesses produced by appellant to buttress his own testimony that Peggy Payne had suffered a fall on May 12, 1973. In connection with Mrs. Whetzel's testimony, defense counsel made the following offer of proof:

"I would like to put an offer on the record that she would say—I don't know the time period, I would be assuming it was the next morning, maybe longer, that this woman complained of medical problems, discussed seeing a doctor, but did not go to a doctor because her doctor was not in town or on vacation and that, therefore, [she] postponed going to a doctor for a couple days and the purpose of this offer would be to tie this in with what the doctor said would have occurred."

While the court permitted Mrs. Whetzel to testify that Peggy had told her, several hours after the fall, that she had suffered a fall and had a headache, the court sustained the objection as to what the victim had said she intended to do, as set forth in the above offer. The apparent basis for the court's decision to exclude such testimony was that it was hearsay and that since the conversation regarding her intention to see a doctor took place the morning following the fall, it did not come within the *res gestae* exception to the hearsay rule.

While the court may have been correct that the victim's statement to Mrs. Whetzel did not come within the *res gestae* exception, the admissibility of the offered testimony did not depend upon whether it qualified under that exception. The testimony was designed to illuminate Peggy Payne's state of mind at a time of particular relevance in the sequence of events, *i. e.*, to show what she intended to do. We have held that such evidence, although hearsay, is admissible under the so-called "state of mind" exception to the hearsay rule. In *Commonwealth v. Marshall*, 287 Pa. 512, 135 A. 301 (1926), this

Court recognized the exception and the reason for allowing it:

"Intention, viewed as a state of mind, is a fact, and the commonest way for such a fact to evince itself is through spoken or written declarations. It is therefore because of the impossibility, in many cases, of proving intention apart from personal declarations, that they are admitted. The true basis of their admission, then, is necessity, because of which an exception to the hearsay rule is recognized, rather than that they are part of the res gestae. (Citations omitted). On this basis it is immaterial whether or not the declaration accompanied and was part of a relevant act." 287 Pa. at 522, 135 A. at 304.

See also *Commonwealth v. Thomas*, 410 Pa. 160, 189 A. 2d 255 (1963), *cert. denied*, 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963); *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234 (1959), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959); McCormick, Evidence, § 295 at 697 (Cleary ed. 1972).

The appellant sought to introduce Mrs. Whetzel's testimony in response to evidence offered by the Commonwealth through Dr. Malina. As noted above, Dr. Malina had testified that had Miss Payne suffered blows other than those struck by appellant severe enough to have caused the subdural hematoma she would have sought medical assistance. Mrs. Whetzel according to the offer of proof, would have testified that Peggy Payne did express to her an intention to see a physician and also explained why she did not do so. This evidence was certainly relevant, and we cannot say that the error in excluding it was harmless. Accordingly, appellant is entitled to a new trial.

Judgment of sentence reversed with a *procedendo*.

MANDERINO, J., did not participate in the consideration or decision of this case.