362 A.2d 244
**COMMONWEALTH of Pennsylvania, Appellant,**
v.
**Tyrone WILLIAMS, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1976.

Decided July 27, 1976.

360

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Gold-blatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah Glass, Philadelphia, for appellant.

John W. Packel, Asst. Defender, Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

EAGEN, Justice.

Tyrone Williams was convicted in a nonjury trial of receiving stolen property.[1] Post-verdict motions were

---

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 3925 provides:

"(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

denied and Williams appealed. The Superior Court in reversing the conviction, *Commonwealth v. Williams*, 233 Pa.Super. 449, 336 A.2d 411 (1975), ruled that insufficient evidence was introduced at trial to establish the element of guilty knowledge necessary to sustain such a conviction. In doing so, the Superior Court held that this Court's decision in *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973), was controlling.[2] The Commonwealth petitioned for allowance of appeal and we granted the petition and now reverse.

The Commonwealth's evidence may be summarized thusly:

R. Thomas Crawford parked his 1973 Ford LTD automobile in a garage at 13th and Walnut Streets in Philadelphia on August 30, 1973 at 5:00 p. m. On August 31, 1973 Crawford returned to the garage and discovered his automobile was missing. The automobile had a temporary Pennsylvania license plate when Crawford parked it.

On September 11, 1973, at approximately 3:20 p. m., a police officer observed an automobile, occupied by an individual later identified as Williams, parked "catercorner" at 60th and Haverford Avenue in Philadelphia. The officer noted a metal license plate on the automobile as having the number 2Y9666. He compared the number to a "hot sheet" or list of stolen license plates. He found the number there listed. The officer turned his unmarked vehicle around and began to return to the corner where he had observed the automobile. As he was doing so, he observed Williams begin to drive west on Haverford from 60th Street. Williams began passing other traffic and "at 61st and Haverford he cut through a gas

2. In *Henderson*, Mr. Justice Manderino filed an opinion announcing the judgment of the Court. However, only two other members of the Court joined in the opinion. Hence, the opinion itself is not binding. See *Commonwealth v. Little*, 432 Pa. 256, 248 A. 2d 32 (1968).

station lot . . . ." Williams was then forced to halt the automobile because of traffic on 61st Street. The officer approached the automobile and ordered Williams out of the vehicle.

Following a request by the officer, Williams was unable to produce an operator's license, title, or registration card. The officer then checked the serial number of the car and learned it was stolen from Crawford on either August 30 or 31, 1973. Moreover, the Commonwealth established that Williams had not been given permission by Crawford or the lot attendant to use the automobile. Further Crawford testified that although the automobile was "new" when it was stolen, it was damaged when returned to him by the police. The damage included a burn on the seat cover, the wires were pulled out from underneath the dash, the knobs were removed from the radio, the radio was loose (Crawford opined these factors seemed to indicate an attempt to remove the radio), and the front and rear bumpers were damaged.

Based on these facts Williams was convicted of receiving stolen goods, i. e., the automobile. Because the Superior Court viewed the evidence as establishing possession under circumstances similar to *Commonwealth v. Henderson, supra*, it reversed the conviction reasoning that an inference of guilty knowledge could not be drawn from such possession. We disagree. The facts in this case differ materially from those in *Henderson, supra*.[3]

3. In *Commonwealth v. Henderson, supra*, we reversed a conviction for receiving stolen property. The property involved there, as here, was an automobile. The lapse of time between the theft and the possession was two and one-half weeks in *Henderson*, while here the lapse is twelve days. Instantly Williams was unable to produce a driver's license or registration, while Henderson produced his driver's license. In *Henderson*, no conduct on the part of Henderson evidenced guilty knowledge, while instantly Williams drove the automobile through a gas station when an officer was pursuing him; and while we recognize that no testimony exists to directly establish that Williams did so because he was aw of the police pursuit, such an inference could reasonably be drawn from this improper and illegal manner of operating

It should also be noted that since *Henderson,* supra, the Supreme Court of the United States decided *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), which reduced in part the existing uncertainty as to the use the Federal Constitution permits of statutory and common law inferences in cases of this nature.[4]

a motor vehicle. As such, the attempt to avoid pursuit, or flight, is some evidence of guilty knowledge. *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973). Moreover, the interior of the automobile instantly evidenced an attempt to remove the radio, in that, it was loose, the knobs had been removed, and the wires were pulled from underneath the dashboard. Finally, the automobile, although new, had been treated with less than normal care during the twelve day time lapse as evidenced by the damage to both the interior and exterior of the vehicle. No such evidence existed in *Henderson,* supra.

4. *Commonwealth v. Henderson,* supra, was decided on May 5, 1973 and was influenced by *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972) and *Commonwealth v. Owens,* 441 Pa. 318, 271 A.2d 230 (1970) (both of which were plurality opinions in so far as the present issues were involved) which in turn had their origins in *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). Among the difficult issues dealt with in those cases were the distinctions between rebuttable and irrebuttable presumptions and permissible inferences, see, e. g., *Commonwealth v. Shaffer,* supra 447 Pa. at 105–106, 288 A.2d at 735–736, and see also, *Commonwealth v. Turner,* 456 Pa. 116, 119, 317 A.2d 298, 299 (1974); the interrelationship of "more-likely-than not" and "beyond a reasonable doubt," see, e. g., *Commonwealth v. Owens,* supra; *Commonwealth v. Shaffer,* supra; and whether or not possession as "unexplained" could be used as a basis for an inference of guilty knowledge without infringement on the right against self-incrimination, see, e. g., *Commonwealth v. Owens,* supra 441 Pa. at 325, 271 A.2d at 233. Subsequent to *Henderson,* the Supreme Court of the United States clarified to some extent these issues with respect to receiving stolen property; in particular, it clarified the permissibility of inferring guilty knowledge from unexplained possession of recently stolen property in relation to the rights of due process and against self-incrimination in *Barnes v. United States,* supra. Thus, we can now approach the instant case with greater certainty than when uncertainty lead to numerous plurality opinions in this area of the law. See *Commonwealth v. Owens,* supra; *Commonwealth v. Shaffer,* supra; *Commonwealth v. Henderson,* supra; *Commonwealth v. Turner,* supra. But see, *Commonwealth v. McFarland,* 452 Pa. 435, 308 A.2d 592 (1973).

 The issue here is whether the evidence is sufficient to sustain a conviction for receiving stolen property. The test for sufficiency of evidence is whether, accepting as true, all the evidence and all reasonable inferences deductible from such evidence upon which the trier of fact could have based his verdict, the evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387, and the numerous cases cited therein. Moreover, in reviewing the evidence, we must consider it in the light most favorable to the Commonwealth. *Commonwealth v. Ilgenfritz,* supra; *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973). But, since the trier of fact found sufficient evidence to establish the crime and since the Superior Court reversed because it viewed the evidence as insufficient to establish only one element of the crime, that is, knowledge that the property was stolen or believing that the property had been stolen, we need only determine if sufficient evidence exists to establish that element. Circumstantial evidence from which guilty knowledge can be inferred is sufficient to sustain a conviction if the underlying circumstantial evidence is sufficiently strong to support the inference beyond a reasonable doubt. *Commonwealth v. Shaffer,* supra; *Commonwealth v. Roscioli,* supra; *Commonwealth v. Thomas,* 429 Pa. 227, 239 A.2d 354 (1968). Moreover, a permissible inference [5] of guilty knowledge may be drawn from the unexplained [6] possession [7] of recently

5. The meaning of a permissible inference is examined, explained and distinguished from a rebuttable presumption in *Commonwealth v. Shaffer,* supra, and *Commonwealth v. Turner,* supra.

6. The term unexplained includes an explanation which a judge or jury as the trier of fact finds unsatisfactory. *Barnes v. United States,* supra 412 U.S. at 844, n. 9, 93 S.Ct. at 2362, n. 9.

7. While it is true that mere possession is insufficient to establish or permit an inference of guilty knowledge, something more than mere possession is generally involved and requires consideration. For instance, the nature of the goods, the quantity of the goods

stolen goods without infringing on an accused's right of due process or his right against self-incrimination, *Barnes v. United States,* supra; *United States v. Peterson,* 522 F.2d 661 (D.C.Cir. 1975); *United States v. Roberts,* 483 F.2d 226 (5th Cir. 1973), as well as from other circumstances, such as the accused's conduct at the time of arrest. The strength of the underlying evidence, in cases where the inference is drawn from unexplained possession of recently stolen goods, is dependent on whether possession is recent and how recent the possession is, as well as, an understanding of what is meant by unexplained.

■ "Recent" is a relative term. Whether possession is recent, and how recent it is, are normally questions of fact for the trier of fact, *Barnes v. United States,* supra, 412 U.S. at 840, n. 3, 93 S.Ct. at 2360, n. 3; *Pendergrast v. United States,* 135 U.S.App.D.C. 20, 416 F.2d 776, 790 (1969) cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L. Ed.2d 243 and require that the trier of fact consider the nature and kind of goods involved, the quantity of goods, the lapse of time from theft and possession, and the ease

involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels, *Commonwealth v. McFarland,* supra; *Commonwealth v. Shaffer,* supra, are important considerations. And while, *Henderson,* supra, discussed the lapse of time and nature of the property, its discussion of the nature of the property included a consideration of borrowing a car and thus having possession so derived serve as a basis for a conviction. This consideration, although warranted at the time of the decision because of uncertainty with regard to constitutional rights in using unexplained possession as a basis for inferring guilty knowledge, see supra n. 4 and textual discussion infra p. 249, is no longer as strong a consideration because possession which is unexplained or unsatisfactorily explained may serve as a basis for the inference and no infringement on constitutional rights results from doing so. See *Barnes v. United States,* supra at 840, n. 3 and 844 n. 9, 93 S.Ct. 2357. Thus, this added circumstance, which may now definitely be considered, i. e., possession which is recent and *unexplained,* must necessarily alter considerations made with regard to the nature of the property and thus, with regard to goods being borrowed in automobile cases.

with which such goods can be assimilated into trade channels, as well as other circumstances relevant in any given case. *Commonwealth v. McFarland,* supra; *Commonwealth v. Shaffer,* supra; *Commonwealth v. Turner,* supra.

So too, whether possession of goods is unexplained is also a question of fact. This is so because normally the Commonwealth will not offer an explanation for the accused's possession; but even if the accused fails to offer evidence, the trier of fact may still consider the circumstances of possession as presented by the Commonwealth as suggesting an explanation for the possession. But if the trier of fact does not so consider the circumstances, he may then consider the possession as unexplained where the accused offers no evidence of explanation. This is not an infringement on the accused's right against self-incrimination, *Barnes v. United States,* supra, and while the practical effect of allowing the inference from unexplained possession may in many cases be to shift the burden of coming forward with the evidence, at least as to receiving stolen goods and the inference of guilty knowledge, it is permissible so long as the inference is considered in accordance with the burden on the Commonwealth to establish every element of the crime beyond a reasonable doubt. *Barnes v. United States,* supra, 412 U.S. at 846, n. 11, 93 S.Ct. at 2363, n. 11. Moreover, even if the accused offers an explanation, the trier of fact may consider the possession as unexplained if he determines the explanation is unsatisfactory. *Barnes v. United States,* supra at 845, n. 9, 93 S.Ct. at 2362, n. 9.

Finally, other circumstances involved in any given case may also be considered by the trier of fact in determining if the inference may properly be drawn from the unexplained possession. Amongst such circumstances are the accused's conduct at arrest and his con-

duct while in possession of the goods, as well as, the accused's relationship, if any, with the victim of the theft. *Commonwealth v. Henderson,* supra; *Commonwealth v. Shaffer,* supra.

Once the inference is properly drawn by the trier of fact and pursuant to the understanding that it cannot be drawn unless he is convinced that the unexplained possession is so recent as to convince him of the inferred fact beyond a reasonable doubt and his conviction of the same is not weakened below this standard by other circumstances, an appellate court may not reverse unless, after considering the evidence, it believes a juror or judge, acting in a reasonable and rational manner, could not have been convinced beyond a reasonable doubt.

Instantly, we are not prepared to so rule and therefore reverse the order of the Superior Court.

In order to arrive at a conviction for receiving stolen goods in this case, the trier of fact must have considered the evidence presented by the Commonwealth as not suggestive of an explanation for the possession. And Williams himself offered no evidence to explain the possession. Thus, the possession was unexplained and this aids in discounting the possibility of Williams having innocently borrowed the vehicle. Very little experience and only a minute amount of common sense is needed to understand that persons do not lend automobiles to strangers, or for that matter to casual acquaintances. If a lender was here involved, he could have been brought forth by Williams.

With regard to the recentness of possession, the evidence establishes a twelve-day lapse in time between theft and possession. Moreover, the property involved was an automobile. The ownership of automobiles involves documents of title and registration cards. An operator of an automobile is required to carry the registration card when operating the vehicle. Act of November

25, 1970, P.L. 743, No. 240, § 1, 75 P.S. § 406 (1971). Williams could produce neither a document of title, a registration card, nor a license when he was stopped by the police and, he did not do so subsequently. We have already commented on the possibility of the automobile having been borrowed, and much the same applies to the possibility of an innocent purchase. Persons do not buy automobiles without requesting documents of title. Finally, automobiles, because they are evidenced by documents of title, are not easily assimilated into trade channels without the documents. And certainly a new automobile is not so assimilated within twelve days. Thus, the possession is clearly recent.

 Given the strength of the evidence showing possession was recent and unexplained, an inference that Williams knew the property was stolen or believed it was probably stolen could unquestionably be drawn beyond any reasonable doubt. Moreover, no other circumstances exist to weaken the inference. On the contrary, the only other evidence available strengthens the inference. Williams was unknown and unrelated to the victim. Williams was not given permission by those who could have rightfully given such permission to use the automobile. And finally, Williams drove the vehicle through a gas station while being pursued by a police officer and the interior evidenced an attempt to remove the radio.

The order of the Superior Court is reversed and the conviction and judgment entered in the trial court are reinstated. The record is remanded to the trial court for the purpose of enforcing execution of the sentence.

POMEROY, J., filed a concurring opinion.

ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

POMEROY, Justice (concurring).

I agree with the Court that the evidence in this record is sufficient to sustain a conviction for receiving stolen property under § 3925 of the Crimes Code. 18 Pa.C.S. § 3925. I thus agree that the Superior Court erred in reversing the trial court's conviction.

The problem as to sufficiency arises because an essential element of the crime involved is knowledge on the part of the defendant that the property of which he is in possession has been stolen. As in most such cases, there was here no direct proof that Williams had such knowledge. The Commonwealth's case thus rested upon circumstantial evidence, and relied in part on the long-recognized common law "presumption" that the element of knowledge as to the stolen character of goods can be deduced from the unexplained possession of goods which in fact have recently been stolen.

The scope of this presumption has been constitutionally troublesome because of its due process and Fifth Amendment implications. In *Commonwealth v. Owens*, 441 Pa. 318, 271 A.2d 230 (1970), our Court, the present writer dissenting, rejected the contention that "common experience suffices to demonstrate that a possessor of a recently stolen pistol more likely than not knew or had reason to know that the weapon had been stolen." *Id.* at 325, 271 A.2d at 234. As a consequence the Court concluded that the presumption offended the due process rights of the accused. In *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972), we transformed the "presumption" into an "inference" and, by so doing, avoided the constitutional infirmities which troubled the Court in *Owens*. We there held that "the connection between the proof of the unexplained possession of the recently stolen property and the permissible inference as to who stole the property meets the constitutional mandate . . . and the proof of the required facts supplies the necessary

nexus which due process demands." 447 Pa. at 109–110, 288 A.2d at 737–738.*

The confusion inherent in the fine conceptual distinctions between presumptions and inferences and between the reasonable-doubt standard and the "rational connection" and "more likely than not" tests was dispelled to a substantial degree by the United States Supreme Court in its opinion in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). In *Barnes,* the Supreme Court squarely faced the issue whether the common law "inference" of guilty knowledge from the possession of recently stolen goods violates due process. In upholding the use of the inference the Court concluded: "On the basis of this evidence alone common sense and experience tells us that petitioner must have known or been aware of the high probability that the checks were stolen. . . . Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen." *Id.* at 845–846, 93 S.Ct. at 2363, 37 L.Ed.2d at 387 (citations omitted). A year later, in *Commonwealth v. Di-Francesco,* 458 Pa. 188, 329 A.2d 204 (1974) our Court had occasion to consider with some care the impact of *Barnes* on our previous decisions in this area of the law. We there noted that when the term "presumption" is used in the criminal law it generally connotes only a standardized permissible inference. *Id.* at 193 n. 3, 329 A.2d at 207 n. 3. See also *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974). We went on to conclude that "the constitutionality of a standardized inference invoked to establish an essential element of the crime charged must be judged by the reasonable doubt stan-

---

\* In my concurring and dissenting opinion in *Shaffer,* I set forth the reasons for my dissent in *Owens,* as well as my reasons for concurring in part with the result of the lead opinion in *Shaffer,* as quoted in the text, *supra. Commonwealth v. Shaffer,* 447 Pa. 91, 114, 233 A.2d 727, 741 (1972) (Pomeroy, J. concurring and dissenting).

dard." *Commonwealth v. DiFrancesco*, 458 Pa. at 196, 329 A.2d at 209. See also *Commonwealth v. Turner*, supra at 232, n. 3, 317 A.2d 300, n. 3. In my view, the decision of the trial court in the case at bar comports with the teachings of *Barnes* and *DiFrancesco*. Accordingly, I agree with the Court that the judgment of the trial court should be reinstated.

MANDERINO, Justice (dissenting).

The crime of receiving stolen goods requires proof that appellant knew that the property possessed was stolen. 18 C.P.S.A. § 3925. Such knowledge on the part of appellant is an essential element of the crime, in addition to the elements of appellant's possession of the property and the theft of the property prior to appellant's possession. Since due process mandates "proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ", *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970), appellant's knowledge must therefore be proven beyond a reasonable doubt.

As stated in *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973):

> "The element of appellant's guilty knowledge may be established by direct evidence of knowledge or by circumstantial evidence from which it can be inferred that appellant had *reasonable cause to know* that the property was stolen. If from the circumstantial evidence, it can be inferred that the appellant had reasonable cause to know, a final inference can reasonably be made that he in fact *knew* that the property was stolen." (Emphasis in original.)
> 451 Pa. at 455, 304 A.2d 156.

The majority maintains that the evidence at trial established sufficient circumstances to support the inference of appellant's guilty knowledge. It relies on a United States Supreme Court case, *Barnes v. United States*,

412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), to support the proposition that the trier of fact may infer guilty knowledge from unexplained possession. *Barnes,* however, does not hold that guilty knowledge may be inferred from unexplained possession alone. *Barnes* requires that before such an inference can be drawn, there must be a rational connection between it and the surrounding circumstances. As the dissenting Justices in *Barnes* pointed out, the burden cannot be shifted to the accused. The prosecution must prove all elements of the crime beyond a reasonable doubt. If the prosecution can rely solely on unexplained possession, a burden is imposed upon the accused to explain that possession in order to avoid conviction. Unexplained possession is simply another way of saying to the jury that a defendant could have but failed to present a defense and that this may be considered in determining guilt. Such an instruction places an unconstitutional burden on the accused. The burden must remain on the prosecution to establish sufficient circumstances, other than the possession of stolen property by appellant, to support the necessary element of appellant's guilty knowledge. Since I do not agree with the majority that the evidence introduced at trial was sufficient to support the inference of appellant's guilty knowledge beyond a reasonable doubt, I must dissent.

The relevant facts show that appellant was found in possession of a stolen automobile twelve days after the automobile had been reported missing; that appellant could produce neither a license nor registration; and that there was damage to the interior of the car, as well as to the front and rear bumpers. Furthermore, the majority also infers an attempt by appellant to avoid pursuit from the fact that appellant drove the car through a gas station while being pursued by the police. However, as there was no indication that appellant knew that he was being followed by police, since the police were in an

unmarked car, any inference of flight is incorrect and indeed irrelevant.

The situation in this case is similar to that in *Henderson,* supra, where it was said:

"The possession of an automobile which does not belong to the driver is not so strange, unusual, or unique that it points to guilty knowledge as more likely than innocent knowledge on the part of the driver. The borrowing or leasing of an automobile for temporary use is not an uncommon occurrence. If every person possessing an automobile which they did not own would be held accountable as having knowledge that the automobile was stolen, every person who borrowed a car would be in peril of a conviction for receiving stolen property."

451 Pa. at 457, 304 A.2d at 157.

I therefore dissent from the majority opinion.