J-S15029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.J.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1489 WDA 2018 |

Appeal from the Dispositional Order Entered August 22, 2018
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-JV-0000227-2018

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 16, 2019**

Appellant, A.J.W., a minor, appeals from the dispositional order entered

after he was adjudicated delinquent on charges of receiving stolen property

and possession of a firearm by a minor.[1]  We affirm.

The juvenile court summarized the history of this case as follows:

> The merit hearing transcript reveals the following facts. [Appellant], an adjudicated delinquent, has been on probation with the Washington County Juvenile Probation Office as of August 13, 2018.  Jonathan Gould, the probation officer assigned to [Appellant's] case, decided to visit [Appellant] at his home in the City of Washington for failing to comply with the terms of his juvenile probation order.  Specifically, [Appellant] had been failing to attend the Jobs Program.  Mr. Gould asked a fellow probation officer, Josh Hanley, to accompany him to [Appellant's] residence.
>
> The two probation officers arrived at [Appellant's] home and knocked on the front door.  Subsequently, [Appellant's] father answered the front door and the officers were invited into the

_____

[1]  18 Pa.C.S. §§ 3925(a) and 6110.1, respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

house. The probation officers and [Appellant's] mother and father went to the back porch of the house to discuss why [Appellant] did not attend the Jobs Program. According to Mr. Hanley, [Appellant's] father told him that his son was refusing to wake up in the mornings and not abiding by the rules of the home (*i.e.*, missing curfews). [Appellant's] father also indicated that he and his son had a verbal altercation the morning of the visit regarding a backpack. Thereafter, [Appellant] came downstairs from [the] bedroom, located on the second story, and entered the back porch. Mr. Gould confronted [Appellant] about the problems he was having with his parents, but [Appellant] was not forthcoming with any information.

At some point later, the probation officers asked to conduct a search of [Appellant's] room for the backpack, and [Appellant's] parents consented. [Appellant's] mother led Mr. Hanley upstairs to [Appellant's] bedroom. Mr. Hanley informed [Appellant's] mother that he was going to conduct a search and she returned downstairs to join Mr. Gould and the others on the back porch. Mr. Hanley found the backpack behind a door inside [Appellant's] bedroom that leads to the attic. According to Mr. Hanley, the only way to access the attic is through this door to [Appellant's] bedroom. The backpack was found just beyond the door leading to the attic on the stairs. Within the backpack, Mr. Hanley found a loaded .38 Special Revolver manufactured by Taurus located under a pair of Air Jordan Nike Sneakers. Consequently, Mr. Hanley went back downstairs and placed [Appellant] in custody.

On August 14, 2018, a delinquency petition was filed against [Appellant] charging him with Receiving Stolen Property (F-2), Firearms Carried Without a License (F-3), and Possession of Firearm by a Minor (M-1). On August 21, 2018, this [c]ourt held a merit hearing on the charges. On that date, [Appellant] acknowledged the charge of Possession of a Firearm by a Minor, but not the remaining two charges. Therefore, the [c]ourt held a hearing to determine whether [Appellant] committed the delinquent acts of Receiving Stolen Property and Firearms Carried without a License. After taking testimony and hearing argument by the attorneys, the [c]ourt ruled that the Commonwealth was unable to prove beyond a reasonable doubt that [Appellant] committed the delinquent act of Firearms Carried without a License, but concluded that the Commonwealth proved by beyond a reasonable doubt that [Appellant] committed the delinquent act

of Receiving Stolen Property. The [c]ourt then imposed a consented disposition.[2]

Juvenile Court Order, 10/1/18, at 1-3.

On August 31, 2018, Appellant filed a timely post-dispositional motion pursuant to Pa.R.J.C.P. 620. The Commonwealth filed a response to Appellant's motion on September 17, 2018. On October 1, 2018, the juvenile court entered an order denying Appellant's post-dispositional motion. This timely appeal followed. The juvenile court did not direct Appellant to file a statement pursuant to Pa.R.A.P. 1925(b). Thereafter, the juvenile court issued its Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues for our review:

I. Did the lower court err in adjudicating the minor delinquent as to the charge of receiving stolen property (specifically a firearm) beyond a reasonable doubt when it found that the evidence was sufficient to prove the element of having knowledge or belief that the firearm in question was probably stolen?

\* \* \*

III. Did the lower err by adjudicating the minor delinquent as to the charge of receiving stolen property (specifically a firearm) beyond a reasonable doubt when the weight of the evidence was against such an adjudication?

Appellant's Brief at 8.[3]

_____

[2] Appellant was ordered placed at Glenn Mills Schools. Order, 8/22/18.

[3] Appellant has withdrawn the second issue from our consideration. Appellant's Brief at 8, 20.

Appellant first argues that his adjudication of delinquency on the charge of receiving stolen property was based upon insufficient evidence. Appellant's Brief at 15-20. Appellant asserts that the juvenile court improperly inferred that Appellant knew or should have known that the firearm was stolen because there was no evidence as to how Appellant came into possession of the gun. *Id*. at 16-17. Also, Appellant claims that the circumstantial evidence that the gun was located in a hidden location and that there were scratches over the serial number is not sufficient proof that Appellant had knowledge that it was stolen. *Id*. at 17-20. We disagree.

We begin our review mindful of the following standard:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial.

*In the Interest of J.C.*, 751 A.2d 1178, 1180 (Pa. Super. 2000). Moreover, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence. *In the Interest of J.D.*, 798 A.2d 210, 212 (Pa. Super. 2002).

Receiving stolen property is defined as follows:

> (a) A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of

- 4 -

another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a).

In order to establish that a person has committed the offense of receiving stolen property, the Commonwealth must prove: "(1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen." **Commonwealth v. Foreman**, 797 A.2d 1005, 1011 (Pa. Super. 2002).

> [A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon an accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest. Nonetheless, the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen. This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory.

**Foreman**, 797 A.2d at 1012-1013 (citations omitted).

The Commonwealth can prove that the defendant in possession of the property "knew or had reason to know" that the property was stolen by wholly circumstantial evidence, such as "a short time between the theft and defendant's possession." *Commonwealth v. Marrero*, 914 A.2d 870, 873 (Pa. Super. 2006). In addition, "[w]e have previously held that possession of a vehicle twelve days after it had been stolen allowed for an inference of guilty knowledge." *Id*. (citing *Commonwealth v. Williams*, 362 A.2d 244, 250 (Pa. 1976)).

The juvenile court offered the following thorough analysis regarding the challenge to the sufficiency of the evidence claim raised by Appellant:

> Herein, it was established that the backpack was located behind a door leading to the attic in which [Appellant] resided (a single-family dwelling) and that the door was only accessible through [Appellant's] bedroom. N.T., 10, 17-18, August 21, 2018. Mr. Hanley testified that he found the gun under a pair of Air Jordan sneakers. *See id*. at 18. The serial numbers on the gun had distinctive or intentionally made scratches on them. *See id*. at 19; Exhibit 3. No other distinctive scratch marks appear on the gun. *See* Exhibits 1 & 2. Additionally, the owner of the gun reported it as missing to the City of Washington Police Department on August 8, 2018 (6 days before it was recovered). *See* N.T., 29-30, August 21, 2018.[1] Further, upon [Appellant] being placed into custody, Mr. Hanley asked [Appellant] if he wanted to inform his mother why he was detained. *See id*. at 20. In response, [Appellant] said to his mother, "They found a gun." *Id*.

> [1] In his post-dispositional motion, [Appellant] argues that the Commonwealth did not "invoke" the recency inference to prove his knowledge or belief that the weapon was stolen, citing *Commonwealth v. Robinson* in support thereof. 128 A.3d 261, 264-65 (Pa. Super. Ct. 2015). This [c]ourt does not read the *Robinson* case as requiring the Commonwealth to "invoke" the recency inference. The [c]ourt can distill all the facts

- 6 -

as testified to by the witnesses and make its own determination of whether the facts, as a whole, indicate whether a particular delinquent act was committed.

The situation at hand is distinguishable from *Commonwealth v. Owens*, 271 A.2d 230 (Pa. 1970). In that case, the Supreme Court held that a conviction could not stand where a handgun had been stolen approximately seven weeks prior to the appellant's arrest, without any other evidence of guilty knowledge from the Commonwealth. *See id*. at 233. It is also different than the facts in *Robinson* where the Commonwealth was unable to produce any evidence of the recency requirement, as well as no evidence supporting an inference of guilty knowledge. As the Superior Court stated,

> The handgun in Robinson's possession was located in an unremarkable location (his coat pocket), and it had not been altered in any way to conceal its stolen status, as the manufacturer's serial number remained plainly visible. Robinson's conduct at the time of arrest likewise provided no indicia of guilty knowledge, as he merely stared "stone–faced" in response to Officer Dinger's inquiries, and he did not offer any false explanation for his possession of the handgun or make any effort to flee apprehension. In sum, the Commonwealth introduced no evidence whatsoever at trial regarding how, when, or where Robinson acquired the handgun, or from whom. Instead, the Commonwealth proved only that Robinson possessed stolen property, which, as indicated, by itself is not sufficient to prove guilty knowledge.

*Robinson*, 128 A.3d at 269.

The [c]ourt finds instructive *Commonwealth v. Williams*, 362 A.2d 244 (Pa. 1976). In *Williams*, the defendant was charged and convicted of receiving stolen property (car) that had been stolen 11 days earlier. *See id*. at 247. In addition to the vehicle being recently stolen, the Supreme Court found significant these factors, which demonstrated circumstantial evidence of the defendant's knowledge of the car's theft: (1) that the victim and the defendant were unknown to each other and unrelated; (2) the

defendant drove through a gas station while being pursued by the police; and (3) and the interior of the car evidenced an attempt to remove the radio. *See id*. at 250. Additionally, in *Commonwealth v. Hogan*, 468 A.2d 493 (Pa. Super. Ct. 1983), the defendant was charged and convicted of receiving stolen property (car) that had been stolen 28 days earlier. In addition to the recency of the vehicle being stolen, the [c]ourt found the circumstantial evidence of the defendant's knowledge of the car's theft was that the defendant was unable to produce an owner's registration card, nor a driver's license. Further, the owner of the car did not know the defendant. *See id*. at 494.

In this case, the [c]ourt could find that the recency (6 days) plus a lack of explanation as to how [Appellant] came to possess the recently stolen property (gun) would have been sufficient to adjudicate [Appellant] delinquent. *See Williams*.[2] There was other indicia, however, of guilty knowledge or belief that the weapon was stolen aside from the mere recency of it being stolen, such as how the gun was hidden or sequestered, that it was located in an area only accessible through [Appellant's] bedroom, that there were distinct scratch marks over the serial numbers, and that there were no similar scratch marks on other parts of the gun.[3]

> [2] Once the Commonwealth proved the recency of the thefts, the [finder of fact] was free to infer the defendant's guilt (that he could have been the thief) unless the defendant could offer a satisfactory alternative explanation for his possession of the stolen goods. *See Commonwealth v. Williams*, 362 A.2d 244 (Pa. 1976) (citations omitted).
>
> [3] The serial numbers on the gun are located on the outside of the gun and imprinted on it; they are located in areas not requiring the gun to be dismantled. *See* N.T., 26-27, August 21, 2018; Exhibit 3.

Juvenile Court Order, 10/1/18, at 5-7.

Upon review of the record in the light most favorable to the

Commonwealth, we are likewise convinced that the juvenile court judge,

sitting as the finder of fact, properly could infer that Appellant possessed the requisite guilty knowledge beyond a reasonable doubt. Therefore, this evidence permits the finder of fact to believe that Appellant either knew or had reason to believe that the gun was stolen. Thus, we conclude that Appellant's sufficiency of the evidence claim with regard to the adjudication of delinquency for receiving stolen property lacks merit.

Appellant next argues that his adjudication of delinquency on the charge of receiving stolen property was against the weight of the evidence. Appellant's Brief at 21-24. Appellant contends that the juvenile court failed to give proper weight to the evidence that he claims refutes the conclusion that he had knowledge or belief that the firearm was stolen. *Id*. at 22. For example, Appellant asserts that, although the firearm was reported missing six days prior to its recovery in Appellant's possession, the gun was not reported as "stolen" until the same day that it was recovered from Appellant. *Id*. Appellant also claims that, although there were scratch marks on the serial numbers of the firearm, the identifying number was still visible. *Id*. at 23.

> Our standard of review is as follows:
>
> The determination of whether a verdict is against the weight of the evidence is governed by the standard set forth in ***Commonwealth v. Champney***, 574 Pa. 435, 832 A.2d 403 (Pa. 2003):
>
>> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the

witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact.  Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.  Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney*, 832 A.2d at 408 (citations omitted).  This Court applies the same standard for reviewing weight claims in juvenile cases.  *McElrath v. Commonwealth*, 405 Pa. Super. 431, 592 A.2d 740, 745 (Pa. Super. 1991).  In considering weight of the evidence claims, it is not the function of an appellate court to substitute its judgment based on a cold record for that of the judge who conducted the juvenile adjudication hearing.  *Id*.  Credibility is for the trier of fact, who is free to believe all, part or none of the evidence presented.  *Id*.  A challenge to the weight of the evidence concedes that sufficient evidence exists to sustain the verdict, but questions which evidence is to be believed.  *Commonwealth v. Charlton*, 2006 PA Super 149, 902 A.2d 554, 561 (Pa. Super. 2006), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (Pa. 2006).  An appellate court reviews the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.  *Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473, 480 (Pa. 1998).

*In the Interest of: R.N., Jr.*, 951 A.2d 363, 370-371 (Pa. Super. 2008).

Here, the juvenile court judge, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant and to make inferences of guilty knowledge.  The juvenile court weighed the evidence and concluded Appellant perpetrated the crime of receiving stolen property.  As the juvenile court stated, "It cannot conclude that the adjudication would shock the conscious."  Juvenile Court Order, 10/1/18, at 8.  We agree that

this determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of factfinder and reweigh the evidence. Accordingly, we conclude that the juvenile court did not abuse its discretion in determining Appellant's weight of the evidence claim lacks merit.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2019