J-S25025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN ALLAN SHAFFER | : | |
| | : | |
| Appellant | : | No. 15 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 12, 2021
In the Court of Common Pleas of Butler County Criminal Division at
No(s):
CP-10-CR-0001247-2017

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: SEPTEMBER 1, 2022**

Appellant, Brian Allan Schaffer, appeals from the October 12, 2021 Judgment of Sentence entered in the Butler County Court of Common Pleas following his jury conviction of Recklessly Endangering Another Person ("REAP") and Simple Assault by Physical Menace.[1]

The relevant facts and procedural history are as follows. In the morning of May 27, 2017, Kevin McMaster, a recovery agent employed by A and L Recovery, went to Appellant's home in a remote area of Middlesex County to repossess Appellant's Chevy Silverado pickup truck. Mr. McMaster was wearing a t-shirt displaying the text "Recovery Agent" on the front and back and his tow truck was clearly marked "A and L Recovery" on both the passenger and driver sides.

_____

[1] 18 Pa.C.S. §§ 2705 and 2701(a)(3), respectively.

Mr. McMaster located the pickup truck parked in Appellant's driveway. As Mr. McMaster was preparing to complete the final step in the process of securing Appellant's truck to Mr. McMaster's tow truck, Appellant, wearing only his underwear and armed with a shotgun, exited his home with the shotgun pointed at Mr. McMaster. While Appellant continued to point his shotgun at Mr. McMaster, Mr. McMaster identified himself and informed Appellant that he was on the premises to execute a repossession order for Appellant's truck. Appellant began to make threats and aggressive statements toward Mr. McMaster. Appellant then climbed into the truck's cab, started the engine, and tried to disengage his truck from the tow truck causing the front end of the tow truck to lift off the ground. Throughout the entirety of their interaction, Appellant and Mr. McMaster were approximately ten feet from each other and, although Mr. McMaster requested that Appellant lower his shotgun, Appellant kept it pointed directly at Mr. McMaster at all times prior to entering the truck. Eventually, Appellant was successful in breaking the truck loose from the tow truck and he drove off into the woods and did not immediately return.

Mr. McMaster called 911 immediately and Middlesex Township Police Officer Brian Costanzo and Sergeant Ruediger[2] arrived shortly thereafter. The officers took photos of the damage to Mr. McMaster's truck and took his statement. Following his return to the police station, Officer Costanzo called

---

[2] Sergeant Ruediger's first name does not appear in the trial court record.

Appellant and requested that Appellant come to the station to discuss the incident. Appellant arrived at the station and provided Officer Costanzo with two different written accounts of what had transpired, as well as a verbal explanation.[3] Police ultimately recovered Appellant's shotgun and secured it with a gun lock.

The Commonwealth charged Appellant with REAP, Simple Assault, Terroristic Threats, and Harassment. Appellant proceeded to a jury trial at which the Commonwealth presented the testimony of Mr. McMaster and Officer Costanzo, who testified to the above facts. Mr. McMaster also testified that Appellant's actions caused Mr. McMaster to be in fear for his life. He further testified that he has never owned a gun and did not threaten Appellant at any time. He conceded that he could not remember the exact words Appellant used to threaten him, that Appellant did not rack[4] the gun in his presence, and that he did not know whether the shotgun was loaded. He testified that, during their interaction, Appellant never reentered his home to dress and put his shotgun away, as Appellant had claimed.

Appellant testified on his own behalf and offered the testimony of his daughter, Cassidy Shaffer. Appellant testified that, on the morning of the

---

[3] The first written statement contradicted much of the report Mr. McMaster had given police. After the officers informed Appellant that it was possible his interaction with Mr. McMaster had been recorded by a camera on one of the vehicles involved, Appellant provided a second written statement.

[4] "Racking" refers to the process by which a shotgun user advances a cartridge case from the gun's magazine into the breach of the gun to allow him to fire a shot.

incident, the sound of Mr. McMaster's truck traversing his gravel driveway roused him from bed. He testified that the noise startled him because he was not expecting visitors and he believed that someone was trespassing on his property to steal his truck. Appellant testified that he never pointed his shotgun at or threatened Mr. McMaster. He testified that, instead, he rested the shotgun on the toolbox of his truck while the two men discussed Mr. McMaster's reason for being at Appellant's home. Appellant testified that he had other guns in his truck that he wanted to remove before Mr. McMaster towed it, but that Mr. McMaster issued a veiled threat to him. In particular, Appellant testified that he "decided that I couldn't touch the guns in the truck . . . there's no way I could come out with an armload of guns when [Mr.] McMaster just said 'you want to see a gun, I'll show you a gun.'"[5] Appellant testified that this veiled threat caused him to be fearful, to remove his truck from the tow truck, and flee. Appellant also testified that, at some point during the encounter, he went back inside his house, dressed, and returned outside without his shotgun.

Ms. Shaffer testified at the time of the incident she was 15 or 16 years old. She testified that on the morning in question, she was awoken by the sound of Appellant yelling at a truck coming down the driveway. She observed from her window that Appellant was upset. She testified that she saw Appellant exit their home with his shotgun. She also testified that, because

___

[5] N.T. Trial, 8/18/21, at 99.

her window was closed, she could not really hear what was going on. Ms. Shaffer confirmed that Appellant entered his truck, forcefully disengaged it from the tow truck, and drove away. She described the act of removing the tow truck as "aggressive."[6] She testified that, after he drove away, Appellant called her on the telephone to warn her not to go outside because Mr. McMaster might be dangerous. Ms. Shaffer testified that she never saw Appellant point his shotgun at anyone.

Also relevant to the instant appeal, during its opening statement, the Commonwealth informed the jury that Appellant had not been making payments on his truck, and that Mr. McMaster was at Appellant's home to repossess it. The Commonwealth explained that, after Mr. McMaster had secured the repossessed pickup truck to his tow truck, Appellant had forcibly removed it from the tow truck, breaking the cables or straps that held the truck in place. Following the opening statement, Appellant moved for a mistrial, asserting that the Commonwealth had improperly referred to uncharged conduct. In response, the Commonwealth stated that "the facts of this case are what they are" indicated that it would be "completely hamstrung" if the court forced it to "try this case in a vacuum" without reference to the context in which the incident arose.[7] The trial court denied the motion

---

[6] *Id.* at 90

[7] *Id.* at 24.

concluding that the information conveyed to the jury in the opening statement constituted the "natural development of the facts of the case."[8]

At the close of the Commonwealth's case, Appellant moved for a judgment of acquittal arguing that the Commonwealth had not proved beyond a reasonable doubt the critical fact upon which it based the charges, *i.e.*, that Appellant had been aiming a shotgun at Mr. McMaster during their interaction. The Commonwealth argued that from the evidence presented, specifically Mr. McMaster's testimony—that Appellant pointed a shotgun at Mr. McMaster and made aggressive statements towards him—it was reasonable for the jury to infer that Appellant intended to use the shotgun. The trial court concluded that the Commonwealth had presented enough evidence to submit the case to the jury and, thus, denied Appellant's motion for judgment of acquittal.

Following its deliberations, the jury convicted Appellant of REAP and Simple Assault.[9] On September 30, 2021, the trial court sentenced Appellant to 6 to 23½ months of incarceration for his Simple Assault conviction. It imposed no further penalty for his REAP conviction. The court determined that Appellant was reentry eligible and immediately paroled him.

---

[8] *Id.*

[9] The Commonwealth dismissed the Terroristic Threats charge after the jury informed the court that it could not reach a unanimous verdict on that charge. The court found Appellant not guilty of Harassment, a summary offense.

That same day, the Commonwealth filed a Motion to Vacate Sentence asserting that, pursuant to **Commonwealth v. Finley**, 135 A.3d 196 (Pa. Super. 2016)[10], by not providing the Commonwealth with at least 10 days' notice and an opportunity to be heard, the court illegally paroled Appellant before he had served his minimum sentence of 6 months.

On October 4, 2021, the court vacated Appellant's sentence and scheduled a resentencing hearing. Following Appellant's resentencing hearing, October 14, 2021, the court agreed with the Commonwealth that, because Appellant's minimum sentence had not expired before the court paroled him, the Sentencing Code required it to provide the Commonwealth with at least 10 days' notice and an opportunity to be heard before it granted Appellant immediate parole. The court, therefore, concluded that it was without authority to immediately parole Appellant. Accordingly, the court resentenced Appellant to a term of 23½ months of probation with restrictive conditions of house arrest/electronic monitoring for 6 months for Appellant's Simple Assault conviction. It imposed no further penalty for his REAP conviction.

_____

[10] This Court, in **Finley**, examined the trial court's authority pursuant to 42 Pa.C.S. § 9756(b)(3) to grant early parole to a defendant who had not yet completed his minimum sentence. **Finley**, 135 A.3d at 199-200. The **Finley** Court vacated the trial court's order granting the defendant early parole finding that the trial court was without authority to do so because it did not make the defendant eligible for early parole at the time of sentence. **Id.** at 200.

On October 21, 2021, Appellant filed a Post-Sentence Motion challenging the weight of the evidence and the discretionary aspects of his sentence. The trial court denied the motion after a hearing.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following five issues for our review:

I.    Whether the trial court abused its discretion or erred as a matter of law when it denied Appellant's Motion for a Mistrial following the Commonwealth's opening statements, whereby the Commonwealth argue[d] issues beyond the charged misconduct in the criminal information which prejudiced [Appellant]?

II.   Whether the trial court abused its discretion or erred as a matter of law when it denied Appellant's Motion for Judgment of Acquittal on all charges following the Commonwealth's case in chief?

III.  Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [] Appellant was guilty of [REAP] and Simple Assault as the Commonwealth fail[ed] to prove the element that Appellant's actions were with the intent to place McMaster[] in fear of imminent serious bodily injury for the charge of Simple Assault and that the Commonwealth failed to meet the element that Appellant's actions placed McMaster[] in danger for the charge of [REAP]?

IV.   Whether the trial court abused its discretion or erred as a matter of law when it instructed the jury on the charged offenses without specifically detailing which specific "action" of [] Appellant was at issue given the criminal information filed by the Commonwealth?

V.    Whether the trial court erred as a matter of law or abused its discretion when it vacated its original sentence following the Commonwealth's objection and position that the trial court lacked legal authority to issue immediate parole thereby causing the court to impose an enhanced sentence upon [] Appellant?

Appellant's Brief at 7-8 (unnecessary capitalization and punctuation omitted; reordered for ease of disposition).

**Issue I- Motion for a Mistrial**

In his first issue, Appellant claims that the trial court abused its discretion when it denied Appellant's motion for a mistrial. He argues that the Commonwealth's opening statement, which repeatedly referred to what Appellant characterizes as "uncharged conduct," *i.e.*, Appellant's forcible removal of his truck from Mr. McMaster's tow truck which damaged Mr. McMaster's tow truck and the repossession of Appellant's truck for non-payment, was severely prejudicial because the jury was unable to separate the uncharged actions from the charged conduct, *i.e.*, Appellant's pointing a shotgun at Mr. McMaster. **Id.** at 17. He asserts that the statement was "designed to inflame the jury's emotions," led to its confusion, and gave the jury the "ability to convict Appellant for conduct for which he was not charged." **Id.** He concludes that he was, thus, deprived of a fair trial. **Id.**

"The purpose of an opening statement is to apprise the jury of how the case will develop, its background, and what will be attempted to be proved; but it is not evidence." **Commonwealth v. Parker**, 919 A.2d 943, 950 (Pa. 2007).

Our rules of criminal procedure provide that a court may declare a mistrial "only for reasons of manifest necessity." Pa.R.Crim.P. 605(B). When reviewing a trial court's denial of a motion for a mistrial, particularly in the context of a prosecutor's comments during opening statements, we assess

whether the trial court abused its discretion. ***Commonwealth v. Cash***, 137 A.3d 1262, 1273 (Pa. 2016). In determining whether a prosecutor committed misconduct during opening statements such as to justify the grant of a mistrial, our Supreme Court has stated:

> It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. In considering appellant's claims of prosecutorial misconduct, we note that a prosecutor's comments are not evidence. . . . Opening statements must be fair deductions from the evidence which the prosecutor expects will be presented at trial.

***Commonwealth v. Bronshtein***, 691 A.2d 907, 917-18 (Pa. 1997) (citations and paragraph breaks omitted).

The trial court provided the following instruction to the jury prior to the Commonwealth's opening statement:

> The opening statements as with other statements of counsel do not constitute evidence. You're not to consider these opening statements as established facts. The only purpose of an opening statement is to give you a general outline of what the case is about so you'll have a better understanding about how each piece of evidence fits in[,] subject[,] of course[,] to your evaluation of the evidence as to its credibility, its accuracy, and the weight to be given to the evidence.

N.T. Trial, 8/18/21, at 16.

As noted above, the trial court denied Appellant's oral motion for a mistrial after concluding that the Commonwealth's statements represented

the "natural development of the facts of the case." *Id.* at 24. In its Rule 1925(a) Opinion, the trial court noted additionally that it had provided the jury with the above opening instruction regarding the purpose of and use to which the jury should put counsels' opening statements. Trial Ct. Op., 2/16/22, at 2. The court explained that it denied Appellant's motion for a mistrial because it did not believe that the Commonwealth's opening statement amounted to misconduct and that Appellant did not suffer prejudice from it. *Id.*

Following our review, we agree with the trial court that the statements to which Appellant objected merely, and permissibly, described the background of the case. We further agree with the trial court that the Commonwealth's statements did not prejudice the jury by causing "in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Bronshtein*, 691 A.2d at 918. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

## Issues II and III- Sufficiency of the Evidence

In his second and third issues, Appellant challenges the trial court's denial of his motion for judgment of acquittal and the sufficiency of the

Commonwealth's evidence in support of his convictions of Simple Assault and REAP.[11]  Appellant's Brief at 17-20, 22-25.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).  "Our standard of review is *de novo*, and our scope of review is plenary."  *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019).  When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014).  This Court will not disturb a verdict when "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa. Super. 2011) (*en banc*) (citation omitted).  The Commonwealth can establish these elements using solely circumstantial evidence. *Id.*

"[T]he fact finder is free to believe all, part, or none of the evidence." *Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted).  In making our determination, we do not re-weigh the evidence and substitute our judgment for that of the factfinder.  *Id.* at 890 Challenges to

---

[11] "[A] defendant's presentation of evidence after a demurrer to the evidence waives this issue for appeal purposes." *Commonwealth v. Price*, 610 A.2d 488, 489 (Pa. Super. 1992) (citing *Commonwealth v. Ilgenfritz*, 353 A.2d 387 (Pa. 1976)).  Because we may treat this issue as a challenge to the sufficiency of the evidence, we address Appellant's second and third issues together.  *See id.*

witness credibility pertain to the weight, not sufficiency, of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014) (citation omitted).

**Simple Assault**

With respect to his Simple Assault conviction, Appellant acknowledges that Mr. McMaster testified that Appellant pointed a shotgun at him. He argues, however that because: (1) Mr. McMaster did not testify that he saw Appellant rack the shotgun; (2) Mr. McMaster was unable to recall the specific threats issued by Appellant at the time of the incident; and (3) the Commonwealth did not produce any evidence that the shotgun was loaded at the time of the incident, the Commonwealth "fail[ed] to establish that [] Appellant pointed [the] shotgun at McMaster[] and that he did so with the intention of placing McMaster[] in fear of imminent serious bodily injury rather than self-defense against a perceived threat." Appellant's Brief at 19, 23-24.

The crime of simple assault requires proof of attempting "by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S. § 2701(a)(3). Serious bodily injury is defined as a "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.*** at § 2301. We have held that the offense may be proven with evidence of pointing a gun at another person under circumstances demonstrating an intent to cause fear of serious injury. ***See In re Maloney***, 636 A.2d 671, 674 (Pa. Super. 1994) (stating, "the act of pointing a gun at

- 13 -

another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury" (citations and internal quotation marks omitted)).

Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict-winner, we conclude that the Commonwealth presented sufficient evidence to support Appellant's conviction of Simple Assault. The evidence presented at trial, and conceded by Appellant, established that Appellant pointed his shotgun at Mr. McMaster.[12] Appellant is, therefore, not entitled to relief on this claim.

**REAP**

Appellant next claims that because the Commonwealth did not present evidence that Appellant's shotgun was loaded or that Appellant racked it to render it operable, it failed to prove the "actual danger" element of REAP. Appellant's Brief at 19-20, 24-25.

A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

_____

[12] Moreover, to the extent that in this issue Appellant challenges the weight the jury gave to: (1) Mr. McMaster's testimony that Appellant pointed a shotgun at him and threatened him; (2) Appellant and Ms. Shaffer's testimony to the contrary; and (3) Appellant's testimony that he was acting in self-defense, we cannot and will not substitute our judgment for that of the jury. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014); *Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011).

To sustain a REAP conviction, the Commonwealth must prove that the defendant had an "actual present ability to inflict harm." **Commonwealth v. Reynolds**, 835 A.2d 720, 728 (Pa. Super. 2003) (citation omitted). The "mere apparent ability to inflict harm is not sufficient [to support a REAP conviction]. Danger, and not merely the apprehension of danger, must be created." **Commonwealth v. Trowbridge**, 395 A.2d 1337, 1340 (Pa. Super. 1978) (footnote omitted) (explaining that pointing an unloaded gun, without more, is insufficient to support a REAP conviction).

Viewing the totality of the evidence, and all reasonable inferences therefrom, in favor of the Commonwealth as verdict-winner, we conclude that the jury had sufficient evidence to conclude that Appellant committed the offense of REAP. The trial court admitted as evidence Appellant's shotgun, which police officers had secured with a gun lock. From this, it was reasonable for the jury to infer that the shotgun was operational. Moreover, Mr. McMaster testified that for most of their interaction, Appellant had his shotgun pointed at him and that Appellant was verbally threatening him. In addition, Appellant himself testified that because he perceived Mr. McMaster as a threat to his property and person, he carried his shotgun with him when confronting Mr. McMaster. Ms. Shaffer also testified that Appellant warned her to remain inside their home because Appellant feared for her safety. From this testimony and evidence, it was reasonable for the jury to infer that Appellant would not have confronted Mr. McMaster—a person Appellant considered a possible threat to him, his family, and his property—unless his shotgun was

loaded and operable. Accordingly, we affirm the jury's verdict of guilty with respect to Appellant's REAP conviction.

**Issue IV- Jury Instruction**

In his fourth issue, Appellant asserts that he was prejudiced by the trial court's failure to provide an instruction to the jury specifying which of Appellant's actions it was to consider when determining whether he had committed the charged offenses. Appellant's Brief at 21-22. He claims that the court's failure led "to an outcome where the jury could have convicted Appellant on uncharged misconduct" such as forcibly removing his truck from Mr. McMaster's two truck. *Id.* at 22.

Appellate briefs must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure and this Court may quash or dismiss an appeal if the defect in the brief is substantial. *Commonwealth v. Adams*, 882 A.2d 496, 497 (Pa. Super. 2005); Pa.R.A.P. 2101. To properly develop an issue for our review, an appellant bears the burden of ensuring that his argument section includes citation to the notes of testimony. *See* Pa.R.A.P. 2119(c) (requiring citation to the record).

Following our review, we conclude that Appellant has failed to develop his argument. Notably, Appellant has failed to cite to the place in the Notes of Testimony where the trial court gave the instruction Appellant asserts is inadequate, and where Appellant preserved this issue by objecting to the court's instruction or by requesting that the court provide the instruction he desired. Moreover, Appellant has not provided this court with the text of the

jury instruction the court did issue so that we could consider its purported inadequacy. Appellant's omissions have deprived this Court of the ability to conduct meaningful appellate review of this issue. Accordingly, we find it waived.

**Issue V-Legality of Sentence**

In his final issue, Appellant claims that the trial court erred as a matter of law when it vacated Appellant's initial sentence of incarceration with immediate parole and resentenced him to a term of probation. Appellant's Brief at 25-26. Appellant argues **Finley**, 135 A.3d 196, upon which both the Commonwealth and the trial court relied, is distinguishable from the instant case because, unlike in **Finley**, the trial court here determined at the time of sentencing that Appellant was reentry eligible. Appellant's Brief at 26.

The issue raised by Appellant, like the issue raised by the Commonwealth in **Finley** concerns the authority of the court to grant early parole to a defendant who has not completed his minimum sentence.[13]

Section 9756(b) of the Sentencing Code contemplates this scenario and provides, in relevant part, as follows:

---

[13] "This determination requires an examination of the requirements for sentences of total confinement and parole eligibility set forth in 42 Pa.C.S. § 9756. Therefore, our examination of this issue is one of statutory interpretation, which is a question of law. Accordingly, as with all questions of law, our scope of review is plenary and our standard of review is *de novo*." **Finley**, 135 A.3d at 199.

(2) The minimum sentence imposed under this section may not be reduced through parole prior to the expiration the minimum sentence unless otherwise authorized by this section or other law.

(3) . . . [T]he court shall, at the time of sentencing, state whether or not the defendant is eligible to participate in a reentry plan at any time prior the expiration of the minimum sentence or at the expiration of a specified portion of the minimum sentence. . . . [A] court may parole a defendant prior to the expiration of the minimum sentence only if the defendant was made eligible to participate in a reentry plan at the time of sentencing. **The court shall provide at least ten days' written notice and an opportunity to be heard, pursuant to section 9776 (relating to judicial power to release inmates), to the prosecuting attorney before granting parole pursuant to this subsection**.

42 Pa.C.S. § 9756(b)(2)-(3) (emphasis added).

Instantly, it is undisputed that Appellant had not completed his minimum sentence of 6 months' incarceration before the trial court granted him parole. Accordingly, the Sentencing Code plainly required the trial court to provide the Commonwealth with at least 10 days' notice and the opportunity to be heard prior to paroling Appellant. It is also undisputed that the trial court had not complied with the requirements of the Sentencing Code before granting Appellant immediate parole. Thus, the court correctly concluded that it had been without legal authority to immediately parole Appellant, and it did not err in vacating Appellant's original sentence. Appellant is, therefore, not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

- 18 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/1/2022</u>