J-S25024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FREDERICK WARREN O'NEAL, JR. | : | |
| | : | |
| Appellant | : | No. 1318 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 9, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000287-2020

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.: **FILED: SEPTEMBER 22, 2022**

Appellant, Frederick Warren O'Neal, Jr., appeals from the August 9, 2021 Judgment of Sentence of 19 to 50 years' incarceration entered in the Beaver County Court of Common Pleas following his jury conviction of Aggravated Assault, Rape by Forcible Compulsion, Rape of an Unconscious or Unaware Person, Strangulation, Sexual Assault, Simple Assault, and False Imprisonment.[1] Appellant challenges the sufficiency and weight of the evidence, the cumulative prejudice of purportedly erroneous evidentiary rulings, and his designation as a sexually violent predator. After careful review, we affirm.

The relevant facts as established at trial are as follows. Appellant and the victim have been superficially acquainted for almost 20 years. On

---

[1] 18 Pa.C.S. §§ 2702(a)(1), 3121(a)(1), 3121(a)(3), 2718(a)(1), 3124.1, 2701(a)(1), and 2903(a), respectively.

November 30, 2019, the victim finished her shift at McDonald's in Beaver Falls at nearly 1:00 AM. She left McDonald's, and walked to the Longhorn Saloon, a bar located across the street from her house. At the bar, she saw a former co-worker and Appellant, whom she had not planned to meet. The victim consumed two vodka cocktails during a 30-minute period, which did not make her feel intoxicated or impaired.

When the victim decided to leave the bar, Appellant told her that he would take her home. At first, the victim declined Appellant's offer, but then she agreed after Appellant said that it would be unsafe for the victim to walk across the street alone because of sex trafficking. The victim waited for Appellant to get into his car, a black Dodge Charger with Michigan license plates and cracks in the windshield, and then she got into the front passenger seat of the car.[2]

Instead of driving the victim home, however, Appellant drove her to the United Methodist Church at Buttermilk Falls. When the victim asked Appellant why they were there, he replied "you'll see."[3] The victim stepped out of the car, and Appellant approached her from behind and choked her. With his arm around her neck still choking her, the victim blacked out. When the victim regained consciousness, she was in the now-reclined passenger seat of the car, with Appellant on top of her. Appellant choked the victim to the point of

_____

[2] The victim later identified Appellant's car as the same car photographed by police and searched as part of their investigation.

[3] N.T. Trial, 3/16/21, at 55.

- 2 -

unconsciousness four times, removed her clothes and put his penis in her mouth. The victim bit Appellant's penis, causing him to ejaculate. During the attack, Appellant told the victim that he had been previously charged with rape, but that the charges "didn't stick."[4]  He told the victim that all "drunk white bitches" are the same and that when they found her body, she was going to look like another "drunk white bitch."[5]

Following the attack, Appellant drove the victim home. During the drive, the victim told Appellant she planned to report the attack to the police. Appellant then apologized and told the victim that he could not go back to jail. Once she returned home, the victim called 911. She then went to the hospital where she submitted to a sexual assault forensic examination.

When she initially reported this incident to the police, the victim indicated that Appellant had picked her up from McDonald's. In a subsequent interview, the victim acknowledged that Appellant had, in fact, left with Appellant from the Longhorn Saloon. She explained that she misreported this fact because her mother disapproved of her drinking at the Longhorn Saloon. The victim also initially indicated that she had seen Appellant at McDonald's earlier in the day, but that she had not interacted with him.

Prior to the commencement of Appellant's trial, on February 10, 2021, the Commonwealth filed a notice of intent to introduce evidence pursuant to

---

[4] *Id.* at 73-74.

[5] *Id.* at 73.

Pa.R.Crim.P. 404(b) of Appellant's statements to the victim in which Appellant claimed to have avoided responsibility for a prior sexual assault. On March 8, 2021, the trial court held a hearing and entered an order finding that the proffered evidence was relevant but deferring until trial its ruling on whether the unfair prejudice outweighed the relevancy of the evidence. At trial, the court determined that the evidence was admissible as its probative value outweighed its potential for unfair prejudice.

At trial, the Commonwealth presented the testimony of numerous witnesses, including the victim, who testified consistent with the above facts. Relevantly, the victim also explained the inconsistencies in her statement regarding where she had encountered Appellant on the night in question. In a further effort to impeach the victim's credibility, Appellant's counsel also cross-examined her with respect to whether she had seen or interacted with Appellant earlier in the day at McDonald's.

In addition to witness testimony, the Commonwealth played for the jury the recorded statement Appellant made to police. By way of background, prior to trial, the Commonwealth and Appellant had agreed that the Commonwealth would redact from his statement all references to Appellant's probation status. Nevertheless, the statement heard by the jury included a reference to Appellant's probation status. Accordingly, Appellant moved for a mistrial. The trial court held a hearing on the motion and the Commonwealth argued that the court could resolve this matter by issuing a curative

instruction. The trial court agreed, denied the motion for a mistrial, and, with the consent of Appellant, provided the jury with a curative instruction.

At the close of the Commonwealth's case, Appellant made an oral motion for judgment of acquittal asserting generally that the Commonwealth had not presented enough evidence to submit the case to the jury. N.T. Trial 3/16/21, at 131-32. The trial court denied the motion.

Appellant testified on his own behalf. He conceded that he and the victim had had a sexual encounter, but claimed that it was consensual.

On March 19, 2021, the jury convicted Appellant of the above charges.[6] With respect to the Strangulation charge, the jury found beyond a reasonable doubt that Appellant committed that offense in conjunction with sexual violence as defined in 42 Pa.C.S. § 62A03.

On March 22, 2021, the trial court entered an order directing the Sexual Offenders Assessment Board ("SOAB") to assess Appellant to determine whether he is a sexually violent predator ("SVP"). The court also directed the preparation of a pre-sentence investigation report and scheduled a sentencing hearing. On June 28, 2021, the Commonwealth filed a *praecipe* for a hearing to determine Appellant's SVP status.

On August 9, 2021, the court held a hearing to determine Appellant's SVP status prior to sentencing him. The Commonwealth presented the testimony of Julia L. Lindemuth, a member of the of the SOAB, and submitted

---

[6] The jury acquitted Appellant of Kidnapping.

to the court the report she prepared. Relevant to the instant appeal, Ms. Lindemuth testified that in preparing such reports, board members typically consider, *inter alia*, allegations of sexual misconduct or assault against defendants, even if they do not result in convictions. She further testified that Appellant used violence against the victim beyond what was necessary to achieve the commission of the crime and his level of violence was related to "sadistic sexual interest patterns."[7] Following the close of testimony, the court found the Commonwealth had met its burden of establishing by clear and convincing evidence that Appellant is an SVP.

That same day, the trial court sentenced Appellant to an aggregate term of 19- to 50-years' incarceration, followed by 7 years of probation.

On August 11, 2021, and September 8, 2021, Appellant filed a post-sentence motion and supplemental post-sentence motion. In the motion, Appellant asserted that the trial court had erred in denying his motion for judgment of acquittal because "the testimony and prior statements of [the victim] tend to show her capacity to manufacture narratives from whole cloth, to the extent that the jury would have no better hope than to guess as to what is actually accurate about what she claimed." Supplemental Post-Sentence Motion, 9/8/21, at 2. Thus, Appellant argued that "[a]ny evidence of the necessary mental states of [the victim] or [Appellant] that is solely predicated upon the testimony of [the victim] should not be credited toward determining

_____

[7] N.T. Hr'g, 8/9/21, at 20.

- 6 -

whether the Commonwealth has met its burden of proof pursuant to [**Commonwealth v.**] **Bennett**, [303 A.2d 220 (Pa. Super. 1973) (*en banc*)]." **Id.** at 2-3.

Appellant also challenged the weight of the evidence, the court's denial of his motion for a mistrial, the admission of the victim's testimony regarding his prior crimes, his designation as an SVP, and requested a reduction in his sentence. Following oral argument on the motion, the court entered an order modifying Appellant's sentence by removing the 1-year periods of probation it imposed for Appellant's Strangulation and Aggravated Assault convictions. It denied Appellant's motion in all other respects.

This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Was it error to deny [Appellant's] motion for judgment of acquittal, based upon the principle set forth in []**Bennett**, 303 A.2d 220?

2. Was it error to deny [Appellants'] post-sentence motion for a new trial based on a result against the weight of the evidence?

3. Was it error to deny [Appellant] relief based upon the combined prejudicial effect of the admission of evidence of his probation status in conjunction with the admission of his alleged statements regarding supposed prior bad acts?

4. Was it error to maintain [Appellant's] designation as a sexually violent predator when said designation relied, in part, on previously acquitted conduct in another case contrary to statutory requirement?

Appellant's Brief at 4.

**Issue 1 – Sufficiency of the Evidence**

In his first issue, Appellant challenges the sufficiency of the evidence[8] in support of the charges whose elements the Commonwealth established through the victim's testimony.[9, 10] *Id.* at 13-24.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019). When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014). This Court will not disturb a verdict when

---

[8] Appellant presents this issue as a challenge to the trial court's denial of his motion for judgment of acquittal. We note that "a defendant's presentation of evidence after a demurrer to the evidence waives this issue for appeal purposes." *Commonwealth v. Price*, 610 A.2d 488, 489 (Pa. Super. 1992) (citing *Commonwealth v. Ilgenfritz*, 353 A.2d 387 (Pa. 1976)). We, however, treat this issue as a challenge to the sufficiency of the evidence. *Id.*

[9] These include the following: the "non-consent" element of Rape by Forcible Compulsion, Rape of an Unconscious Person, Strangulation, and Sexual Assault; the "unconsciousness" element of Rape of an Unconscious Person; the "unlawfulness of restraint" element of False Imprisonment; and the "existence of or risk of or intention to cause serious bodily injury" element of Aggravated Assault. Appellant's Brief at 13.

[10] A claim that a witness's prior inconsistent statements were too unreliable to establish, as a matter of law, a defendant's guilt beyond a reasonable doubt implicates the sufficiency of the evidence. *Commonwealth v. Brown*, 52 A.3d 1139, 1157 n.18 (Pa. 2012).

"there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Orr***, 38 A.3d 868, 872 (Pa. Super. 2011) (*en banc*) (citation omitted). The Commonwealth can establish these elements using solely circumstantial evidence. ***Id.***

"[T]he fact finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Mobley***, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). In making our determination, we do not re-weigh the evidence and substitute our judgment for that of the factfinder. ***Id.*** at 890. Challenges to witness credibility pertain to the weight, not sufficiency, of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014) (citation omitted).

Instantly, Appellant concedes that, if true, the victim's testimony would be sufficient to prove the charges against him. However, relying on ***Bennett***, 303 A.2d 220, Appellant asserts that the inconsistencies and falsehoods in the victim's testimony pertaining to events preceding the attack, including the location at which the victim entered Appellant's car, "deprived the jury of the ability to form anything exceeding a guess concerning whether her account of the sexual interaction was accurate, or [Appellant's] was. Such a guess would be insufficient to sustain a verdict in a civil matter, and all the more insufficient given the enhanced due process protections that inure to criminal defendants." Appellant's Brief at 15, 23-24. In other words, Appellant argues that the victim's testimony was so unreliable and contradictory that the jury could only speculate about Appellant's guilt.

- 9 -

In **Bennett**, this Court reversed the defendant's conviction after concluding that the testimony of the witness on whom the Commonwealth primarily relied in proving the charges against the defendant was "so contradictory on the essential issues that any finding by the jury [was] a mere guess[.]" **Bennett**, 303 A.2d at 221 (citation omitted). Thus, we concluded that "when the testimony is so contradictory on the basis issues as to make any verdict thereon pure conjecture the jury should not be permitted to consider it." **Id.** (citation omitted). **See also Commonwealth v. Farquharson**, 354 A.2d 545, 550 (Pa. 1976) (explaining that "[t]he **Bennett** principle is applicable only where the party having the burden of proof presents testimony to support that burden which is either so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason.").

In **Commonwealth v. Bibbs**, 970 A.2d 440 (Pa. Super. 2009), this Court described the co-defendant's testimony in **Bennett** that this Court found to be insufficient due to its inherent contradictions as:

> several wholly different, conflicting and inconsistent versions of when and how he had told the defendant that the car had been in fact stolen by him. On a previous occasion the witness had denied he had ever conveyed to defendant knowledge of the car's theft. With each new version the witness would recant the previous one and protest that the newest version was in fact the true one.

**Id.** at 446 (citation omitted). Therefore, for testimony to be so inherently contradictory, it must display more than just inconsistencies, it must involve wholly incompatible stories that the witness claims to be the absolute truth.

Following our review, we conclude that the record belies Appellant's assertion that the victim's prior statements and trial testimony pertaining to the events leading up to the attack were so inconsistent and contradictory as to be insufficient to support a finding of guilt. The record reflects that the victim initially reported that on the night of the attack she encountered Appellant at McDonald's, when, in fact, she left with him from the Longhorn Saloon. She also reported that she had seen Appellant at McDonald's that day, a claim that surveillance recordings did not support. These discrepancies are far from the wholly incompatible stories told by the witness in **Bennett**. Furthermore, the victim's statement and testimony with respect to the assault, rape, and strangulation, *i.e.*, that Appellant took her to Buttermilk Park, strangled her into unconsciousness multiple times, and raped her, were consistent and never contradictory. Moreover, and importantly, the specific testimony that Appellant asserts was "inconsistent and false" was not offered by the Commonwealth to support its burden of proving the elements of the crimes charged. Instead, this testimony merely implicates the victim's general credibility and represented legitimate ground for cross-examination, which Appellant's counsel conducted. In no event was the victim's testimony on the essential facts of the rape so contradictory that the jury should not have been permitted to consider it as a matter of law. Appellant's claim, thus, fails.

**Issue 2 – Weight of the Evidence**

In his second issue, Appellant challenges the weight the jury gave to the victim's "thoroughly unreliable" testimony about "basic narrative facts,

including where she encountered [Appellant] on the date of the incident in question." Appellant's Brief at 24-26. He argues that her "testimony was so impaired by fundamental unreliability" that Appellant's guilty verdict "shocks one's sense of justice" and necessitates a new trial. *Id.* at 24.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *Id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the

verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.***

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." ***Id.*** (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Widmer***, 744 A.2d at 751 n.3.

Instantly, the jury, who had been made aware of the victim's prior inconsistent statements about the events that preceded the assault, credited the victim's testimony over Appellant's testimony that their sexual encounter was consensual. Appellant essentially asks this Court to reassess the credibility of the victim and Appellant, and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the

verdict was not so contrary as to shock the conscious. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**Issue 3 – Admission of Evidence and Cumulative Prejudice**

In his third issue, Appellant claims "cumulative prejudicial effect" of the presentation to the jury of his recorded statement which inadvertently included a reference to his probation status and the victim's testimony that Appellant had told her that he had previously "gotten away with sexual assault" necessitates a new trial. Appellant's Brief at 26-30. He concedes that, taken alone, reference to his probation status would not justify a new trial; but when combined with the court's admission of the Rule 404(b) evidence of prior criminal conduct—which Appellant argues was itself inadmissible as the likelihood of unfair prejudice outweighed its probative value simply owing to the victim's purported lack of credibility—entitles him to a new trial. *Id.* at 26-29. Although Appellant acknowledges that the court issued an instruction to cure any potential prejudice, he argues, without citation to the notes of testimony, that this is insufficient to cure the "cumulative effect of multiple admissions of prejudicial evidence[.]" *Id.* at 30.

Appellate briefs must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure and this Court may quash or dismiss an appeal if the defect in the brief is substantial. *Commonwealth v. Adams*, 882 A.2d 496, 497 (Pa. Super. 2005); Pa.R.A.P. 2101. To properly develop an issue for our review, an appellant bears the burden of ensuring

that his argument section includes citation to the notes of testimony. *See* Pa.R.A.P. 2119(c) (requiring citation to the record).

Following our review, we conclude that Appellant has failed to develop his argument. Notably, Appellant has failed to cite to the place in the Notes of Testimony where the Commonwealth offered the evidence Appellant now challenges and where the trial court issued its curative limiting instruction to the jury. Moreover, Appellant has not provided this Court with the text of the statements and testimony or of the jury instruction so that we may consider whether the trial court abused its discretion in admitting the evidence. Appellant's omissions have deprived this Court of the ability to conduct meaningful appellate review of this issue. Accordingly, we find it waived.

**Issue 4 – SVP Determination**

In his final issue, Appellant asserts that the trial court erred in determining that Appellant is an SVP based on the SOAB report that improperly considered prior sexual assault allegations against Appellant for which he was not convicted. Appellant's Brief at 30. Appellant baldly asserts that "prior criminal allegations that did not result in conviction are outside the scope of statutorily permissible factors for the SVP designation" and concludes, therefore, that this Court should vacate his SVP designation. *Id.* at 32.

A challenge to the trial court's SVP determination raises a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006). A court

will determine that an offender is an SVP where the Commonwealth provides clear and convincing evidence to support the designation. *Id.* at 219.

An SVP is defined as a person who has been convicted of a sexually violent offense and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015). As this Court has explained,

> [w]hen performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim[]; the defendant's relationship with the victim[]; the victim['s] age[]; whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim['s] mental capacity[]; the defendant's prior criminal record; whether the defendant completed any prior sentence[]; whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. *See* 42 Pa.C.S. § 9799.24(b).

*Id.* at 189-90.

With respect to the consideration of a defendant's prior offense history, the Judicial Code directs that an SVP assessment shall include, **but not be limited by**, an examination of factors including "(i) [t]he individual's prior criminal record[;] (ii) [w]hether the individual completed any prior sentences[; and] (iii) [w]hether the individual participated in available

programs for sexual offenders. 42 Pa.C.S. § 9799.24(b)(2)(i-iii). The Judicial Code also directs consideration of "[f]actors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense." *Id.* at § 9799.24(b)(4).

There is no statutory requirement that all or any particular number of the statutory factors be present or absent in order to support an SVP designation. *Meals*, 912 A.2d at 220-23. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. *Id.* at 222. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities. *See id.* at 221. Thus, while the SOAB is to examine all the statutory factors, the Commonwealth does not have to show that any certain factor is present or absent in a particular case. *See id.* Rather, the question for the trial court is whether the Commonwealth's evidence, including the SOAB's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008).

Instantly, Julia Lindemuth testified at Appellant's SVP assessment hearing that in preparing her assessment report she considered, *inter alia*, "the instant offense [and] past predatory sexual behavior including records regarding two sexually related cases." N.T. Hr'g, 8/9/21, at 12-13. Ms. Lindemuth acknowledged that, although those cases did not result in

conviction with respect to the sexual aspect of the charges, the allegations were sexual in nature.[11] *Id.* at 13. She testified that she looks at patterns of behavior to determine whether a defendant's behavior is caused by a mental abnormality. *Id.* at 14. Ms. Lindemuth also considered the evidence presented in the instant case and opined that Appellant's use of violence—namely choking the victim several times to the point of unconsciousness—exceeded that which was necessary to achieve commission of the crimes and indicated "sadistic sexual interest patterns." *Id.* at 20. She further testified that she considered all the statutory factors in determining Appellant's SVP status and she reviewed analysis of these factors with the court on the record. *See id.* at 19-36. Ms. Lindemuth concluded that Appellant had a personality disorder likely to contribute to his reoffending. *Id.* at 35.

As a prefatory matter, we observe that Appellant has not cited any authority to support his bald claim that prior criminal allegations that did not result in conviction are outside the scope of statutorily permissible factors for an SVP designation. Furthermore, our review of the record indicates that the Commonwealth presented ample evidence, as set forth above, to support the trial court's conclusion that Appellant is an SVP. Accordingly, Appellant is not entitled to relief on this claim.

Judgment of Sentence affirmed.

---

[11] The allegations included "forced sexual interaction," and, in particular, a "forced sexual encounter that also involved choking and hitting." N.T. Hr'g, 8/9/21, at 17-18.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2022